CITY OF ST. PAUL v. JOHN SCHLEH and Another.[1]

June 28, 1907.

Nos. 15,278—(85).

**City Ordinance Void.**

> An ordinance relating to lumber yards and woodyards prohibited the location and operation of a woodyard "within one hundred fifty feet of any inhabited portion of any residence district, without first securing the consent and permission of the common council so to do." *Held* void for uncertainty.

Appeal by defendants from an order of the municipal court of the city of St. Paul, Finehout, J., overruling their demurrers to the complaint, from an order denying a motion for trial by jury, from the order and findings of the court entering judgment against defendants, and from the judgment entered pursuant to the findings, after a trial and conviction of the violation of a city ordinance. Reversed.

*Manahan & Cannon,* for appellants.

*J. C. Michael* and *Michael Doran, Jr.,* for respondent.

[1]Reported in 112 N. W. 532.

LEWIS, J.

Among the charter powers conferred upon the common council of the city of St. Paul is the following:

> To regulate the place and manner of weighing and selling hay, the measurement and selling of firewood, coal, and lime, and to appoint suitable persons to conduct and superintend the same.

Under this grant of power the council enacted the following ordinance:

> An ordinance relating to lumber yards and woodyards.
>
> The common council of the city of St. Paul do ordain as follows:
>
> Section 1. That hereafter no person, company or corporation shall establish, maintain and conduct any lumber yard or woodyard within one hundred fifty feet of any inhabited portion of any residence district, without first securing the consent and permission of the common council so to do.

Section 2 declared a violation of the ordinance a misdemeanor, and provided a fine not to exceed $100 for each offense.

The complaint charged that in violation of the terms of the ordinance appellants maintained a woodyard in block 20 of Moss' Outlots to the city of St. Paul, without first securing the consent and permission of the common council, block No. 20 being then and there located within the residence district of the city of St. Paul, and such woodyard being then and there less than one hundred fifty feet from the dwelling house commonly known and designated as No. 657 Selby avenue. The complaint was demurred to upon the ground that it did not state facts sufficient to constitute a public offense. Demurrer overruled, and the cause went to trial. Appellants were convicted, and it was adjudged that they pay a fine of $10, and on default be imprisoned in the workhouse of the city of St. Paul until the fine should be paid, not exceeding the term of ten days each. Appeal was taken to this court from the order overruling the demurrer, and also from the judgment entered in the court below.

Although conducting a woodyard is recognized as a perfectly legitimate business, yet, like other kinds of occupations in themselves law-

ful, it may become objectionable by reason of the manner and place of conducting the same. It is quite evident that woodyards, if permitted to be operated in all parts of the city without restriction, might become public nuisances, and so come within the class of occupations which may, in the wisdom of the legislature, be regulated under the police power, and with that in view it is quite as important to prevent their location within certain districts as it is to abate them after becoming established. If the measures adopted in this ordinance have the tendency to regulate and prevent such business from becoming a nuisance, the courts will not assume to determine whether such regulation is wise, or the best that might have been adopted. State v. Corbett, 57 Minn. 345, 59 N. W. 317, 24 L. R. A. 498.

According to the facts in this case, appellants, without applying for license from the city council, located and operated a woodyard on block 20, bounded on the south by Selby avenue, east by Dale street, north by Dayton avenue, and on the west by St. Albans street. On the south half of the block, and fronting on Selby avenue, are fourteen business places and one residence, and there are five or six residences on the north side of the block fronting on Dayton avenue. At the trial the state proceeded upon the theory that the inhabited portion of a residence district within the meaning of the ordinance should be determined by taking the woodyard as the center and strike a circle with a radius of one hundred fifty feet. If a majority of the houses within the circle are residences, then the woodyard is within one hundred fifty feet of the inhabited portion of a residence district. According to the evidence, the one hundred fifty feet would reach across Selby avenue and take in a considerable number of residences on that side, and also one or two on the opposite side of Dale street and a portion of those fronting on Dayton avenue. If, however, block 20 is considered a district by itself, then the proportion was sixteen business places to seven or eight residences. It will be noticed that the complaint charged appellant with maintaining the woodyard within one hundred fifty feet of a particular residence located in block 20 and fronting on Selby avenue.

Appellants claim that the ordinance is void because of uncertainty, for the reason that "residence district" is not defined, and that it is impossible to determine what is meant by "inhabited" portion of a resi-

dence district. In a general sense the residence portion of the city of St. Paul may be distinguished from the central business section; but it would be a difficult matter to locate any definite line between the business and residence sections. There are many business sections within the general residence district, and, as developed in this case, nearly the entire frontage of a block on a particular street is devoted to business. If it be conceded that the common council, in enacting this ordinance, had in mind the general outlying residence portion, as distinguished from the central business portion, of the city, then it is uncertain what is meant by the inhabited portion of such residence district. Does this mean within one hundred fifty feet of any house occupied as a residence? Such seems to have been the idea of the state in drawing the complaint. Or does it mean that territory, embraced within a circle the diameter of which is three hundred feet, wherein the majority of the houses are residences? Such seems to have been the position of the state at the trial. Or does it mean a block, or ward, or some other division? We are of the opinion that appellants' objection to the ordinance upon the ground of uncertainty and indefiniteness is well taken, and that it is void for that reason.

Order reversed.