BEN F. WASEM, Respondent, v. CITY OF FARGO, a Municipal Corporation of the State of North Dakota, Alex Stern, Mayor of the City of Fargo and as such Mayor, J. J. Jordan, O. M. Strate, John Hogan, Kate S. Winder, and Alex Stern, City Commissioners of the City of Fargo, Leigh Monson, Police Magistrate,

Note.—On validity of ordinance restricting location of business of undertaking, see notes in 3 A.L.R. 966 and 25 A.L.R. 764.

See also 20 R. C. L. 455; 3 R. C. L. Supp. 1075; 5 R. C. L. Supp. 1108.

Wm. H. Shure, City Attorney for the City of Fargo, and as such City Attorney, Appellants.

(25 A.L.R. 758, 190 N. W. 546.)

**Municipal corporations — ordinance prohibiting establishment of undertaking business within portion of city "occupied mainly for residences" held void for uncertainty.**

An ordinance which provides that no undertaking establishment shall be established or maintained within those parts of the city occupied mainly for residences is indefinite and uncertain, and, therefore, invalid.

' **Opinion filed November 1, 1922.**

Municipal Corporations, 28 Cyc. p. 354 n. 67.

Action in District Court, Cass County; *Cooley, J.*, to restrain the enforcement of an ordinance.

Defendants have appealed from the judgment.

Affirmed.

*W. H. Shure,* City Attorney (*Chas. A. & Chas. M. Pollock* and *B. F. Spalding* of counsel), for appellants.

*Lawrence & Murphy,* for respondent.

### Statement.

BRONSON, J. This is an action to enjoin enforcement of an ordinance. Defendants have appealed from decree of injunction determining the ordinance to be void. The facts are: For some twenty-one years in Fargo, plaintiff has been engaged in the undertaking business. In April, 1919, he negotiated for the purchase of 4½ lots in block 32 of the original townsite of Fargo for the purpose of conducting there his business and erecting a building therefor. On May 1st, 1919, a deed was issued. About May 5th, 1919, plaintiff made a contract for the excavation work for the building. Certain resident citizens of Fargo protested to him and to the city commission against such location of the business. A petition was presented to the city council requesting an ordinance to be enacted which would prohibit the building and maintaining of a morgue in portions of the city occupied mainly for residences. On May 7th, 1919, petitions were received by the city com-

mission.   On May 8th, 1919, an ordinance was introduced and read.
It provided, § 1, "That it shall be unlawful for any person, firm, or
corporation to build, establish, operate, or maintain within those parts
of the city of Fargo occupied mainly for residences, any morgue, under-
taking parlors, room,  or place used solely or mainly for the purpose of
embalming, preserving, or caring for the dead; or any chapel or room
used solely or mainly for funeral purposes."   On May 16th, 1919,
this ordinance was amended by providing: "No permit shall be granted
to erect or maintain within the limits above provided, any morgue,
undertaking parlors, or room or place used solely or mainly for purposes
mentioned in § 1 hereof; and if any such permit has been heretofore
issued the same shall be and is hereby revoked and canceled."   The
amended ordinance was then adopted.   By its terms it provided that
it should take effect and be in force ten days from and after its passage
and publication.   The ordinance was published May 17th and 20th,
1919.   Plaintiff was present at one of the meetings of the city council.
He knew about the ordinance.   In the meantime the work of excavation
proceeded.   Plaintiff made a contract to erect the building.   On May
17th, 1919, he secured from the city's superintendent of buildings a
permit to build upon the premises a building to be used as a morgue.
On Oct. 26th, 1919, plaintiff was arrested for violation of the ordinance.
Upon trial before the police magistrate he was convicted and fined $100.
Plaintiff appealed from the judgment of conviction.   Later, in the
district court, upon trial of such appeal, the jury disagreed.

Meantime, the construction of the funeral home progressed to com-
pletion and about Oct. 1st, 1919, plaintiff started to use the same as a
morgue and to conduct his entire business there.   Since that time he
has so used the premises.   On March 10th, 1920, this action was started
and a temporary order secured enjoining the city officials from enforc-
ing the ordinance.   The complaint alleges, among other grounds, that
the ordinance is invalid, because indefinite and uncertain, and that
plaintiff is threatened with actions and with arrest from day to day,
while such mortuary is so maintained by him.

At the trial the inquiry was directed specifically to the legality of
the ordinance.   Defendants introduced a plat of the city of Fargo.
Defendants offered to prove through two witnesses that all that part
of the city of Fargo, south of 1st avenue south (wherein the mortuary

is located), has since the organization of the city been occupied mainly for residence purposes; that, likewise, the portion of the city north of 6th avenue north has been occupied mainly for residence purposes; that the business portion of the city lies generally in the territory between the N. P. Ry. and the G. N. Ry. (south, and north, respectively, of the residence portions). This offer was rejected upon the grounds that plaintiff sought injunctional relief based upon the invalidity of the ordinance.

The Honorable Chas. M. Cooley, district judge, found that for more than twelve years plaintiff had been engaged in Fargo in the lawful business of maintaining an undertaking establishment; that on April 5th, 1919, plaintiff negotiated for the real estate in block 32; that he began active work on May 8th, 1919, to erect and construct a mortuary thereon; that plaintiff has expended about $25,000; that the mortuary chapel cost about $15,000; that the ordinance became effective on June 1st, 1919; that the work of construction proceeded for a period of nearly three months before any attempt was made to enforce this ordinance; that, before the enactment of the ordinance, a building permit was given to plaintiff for the erection of such mortuary in accordance with the approved plans and specifications, which permit had never been revoked; that plaintiff has been threatened with a multiplicity of suits and prosecutions under the ordinance which require injunctional relief; that the ordinance is illegal and void for uncertainty; that it is incapable of valid enforcement because of the indefinite and uncertain territory within which the same purports to be operative. Accordingly, the ordinance was held void and a judgment to prevent its enforcement was entered.

## Decision.

The only question requiring consideration is whether the ordinance is indefinite and uncertain, and, therefore, invalid.

The city possesses the power to regulate the establishment and maintenance of undertaking establishments and to prescribe the limits within which they may be operated. Comp. Laws, 1913, § 3818 ¶¶ 52–75. The express statutory authority is conferred upon the city to regulate the location of undertaking establishments. ¶ 75, supra.

The city of Fargo has sought to exercise this authority. By the

ordinance it declares, in effect, that undertaking establishments are nuisances per se if located and maintained within those parts of the city occupied mainly for residences.

The business of undertaking, which theretofore was wholly a lawful business conducted anywhere within the city limits, still remains a lawful business where it is not conducted in a place prohibited by the ordinance.

But, since the ordinance became effective, how may an owner of an undertaking establishment, desirous of obeying' the law, determine whether his location now is, or yesterday was, in a lawful or unlawful place? For the test of the validity of the ordinance depends upon its universality; its universal application in determining a definite and certain restricted location. In this case the test of the validity of the ordinance is not made dependent upon proof that within a certain designated area, wherein the mortuary is located, the properties are either mainly or wholly occupied for residences. No proof has been presented in that regard.

In determining the "parts occupied mainly for residences," what portion of the city around the locus in quo shall be included? What portion excluded? How much of a portion in extent, in length, in width, may be considered? What measure or rule stick is furnished by the ordinance, through which the undertaker may determine that his location, present or prospective, is lawful? May the same location, through the consideration of eight or nine blocks, of surrounding and adjacent territory, by testimony of witnesses, verdict of jury, and finding of court, be made unlawful because "occupied mainly for residences," and, through the consideration of another eight or nine blocks, likewise surrounding and adjacent, in another action, by other testimony, another verdict of the jury, and finding of the court, be made lawful? If so, is the rule of guidance fixed by the ordinance or delegated to others? Defendants present no rule of ascertainment. However, they contend that there are well-recognized districts in cities patent to all and capable of judicial notice. That business districts are central, residence districts, suburban; that the line of demarcation can be ascertained. But the ordinance by its terms, does not confine the prohibition of location to exclusive residence districts, nor award the license of lawful locality to exclusive business districts. Pursuant to

the very terms of the ordinance, a location within territory, partly devoted to business purposes, may be prohibited because such territory is "occupied mainly for residences." In Phillips v. Denver, 19 Colo. 179, 41 Am. St. Rep. 230, 34 Pac. 902, the ordinance involved, provided that no livery stable should be located in any block where a school building was situated or in any block opposite to a block where a school building was situated. The court stated that the record did not show the size or dimension of blocks in Denver nor show that the blocks were of uniform dimensions; therefore, there was no definite distance from school buildings within which the construction and maintenance of livery stables were prohibited by the ordinance. It was held invalid. In St. Paul v. Schleh, 101 Minn. 425, 118 Am. St. Rep. 638, 112 N. W. 532, the ordinance involved prohibited the location of a woodyard within 150 feet of any inhabited portion of any residence district without first securing the consent and permission of the common council; the court stated that in a general sense the residence portion of a city may be distinguished from the central business portion; but it would be difficult to locate any definite line between business and residence sections. If the ordinance meant the general outlying residence portion, what did it mean by the inhabited portion of such residence district? Did it mean within 150 feet of any house occupied as a residence? Or, did it mean that territory embraced within a circle, the diameter of which is 300 feet, wherein the majority of houses are residences? Or, did it mean a block, a ward, or some other division? The ordinance was held void for uncertainty. However, in People ex rel. Keller v. Oak Park, 266 Ill. 365, 107 N. E. 636, an ordinance was upheld which provided that no public automobile garage should be constructed on any site where two thirds of the buildings within a radius of 500 feet thereof were used exclusively for residence purposes. The prohibited territory in such ordinance was definitely ascertainable. Consonant with the principles deducible from the above-stated cases, and, in accordance with the well-recognized principle of law that a municipal ordinance must be definite and certain, I am clearly of the opinion that the ordinance involved herein is indefinite and uncertain and, therefore, is invalid. The judgment of the trial court should be affirmed.

BIRDZELL, Ch. J., and GRACE, and CHRISTIANSON, JJ., concur.

ROBINSON, J. (dissenting). This is an appeal from a judgment enjoining the city of Fargo from the enforcement of an ordinance against maintaining a morgue or undertaking establishment in any part of the city occupied mainly for residence purposes. It appears that pending the passage of the ordinance the plaintiff purchased a lot in the best residence part of the city and commenced the erection of a morgue or undertaking establishment. It seems that he run a race with the city commissioners by trying to get the establishment well under way before the passage of the ordinance. He avers that prior to the passage he had expended $1,000 on the building and incurred obligations to pay on a building contract $15,000, and that subsequently he paid the same. The plaintiff contends that the city counsel had no legal power to pass and enforce the ordinance restraining him from conducting the business. Also, that the ordinance is indefinite, uncertain, and that the business is not a nuisance.

The ordinance makes it unlawful for any person to maintain within parts of the city of Fargo occupied mainly by residences any morgue, undertaking parlors, rooms or places used mainly for the purpose of embalming, preserving or caring for the dead, or any chapel or room used mainly for funeral purposes.

For violation the punishment is a fine not exceeding $100 or imprisonment not exceeding three months, or both. Now it seems entirely clear that neither the ordinance nor the act of the legislature is in any way ambiguous, indefinite, or uncertain. By statute, § 3818, the city commission is given power to pass the ordinance in question. The power is given by §§ 52, 54, 75.

Section 52: To declare what shall be a nuisance and abate the same and to impose fines upon persons who may create, continue, or suffer a nuisance to exist.

Section 54: To do all acts and make all regulations which may be necessary or expedient for the promotion of health or for the suppression of disease.

Section 75: To regulate the location of hospitals and undertaking establishments.

The ordinance is strictly within the letter and spirit of the law and the power granted to the city commissioners. Contrary to the ordinance

the plaintiff undertook to construct and maintain an undertaking establishment in a part of the city used mainly for residence purposes. Indeed, it is in the very best residence part of the city. The ordinance prohibits the keeping of an undertaking establishment within "those parts of the city of Fargo occupied mainly for residences." By the use of his eyes any person can see and determine as to whether any part of a city is occupied mainly for residences. There is no claim that the undertaking establishment is in a part of the city that is not occupied mainly and almost exclusively for residence. It is true the plaintiff avers that an undertaking establishment is not a nuisance per se, and the same is true of a livery stable; but it may become an actual nuisance by reason of its location. This the statute clearly contemplates. Hence it gives the city commissioners power to regulate the location of undertaking establishments. But it seems the plaintiff claims a pre-emption right to carry on the business because in the race against time he succeeded in getting the morgue well under way before the passage of the ordinance. But that is a matter of no account. Even though it had been wholly constructed and long used before the ordinance the city commissioners had perfect authority to condemn it and declare it to be a nuisance. Under the law as it is no person can acquire any pre-emption right to conduct a business that may become a nuisance. In every city like Fargo there are districts that are used mainly for residences,—districts in which the people have a special right to cheerful, sanitary, happy, and even esthetic homes and in such a district a morgue or undertaking establishment is offensive and out of place. And indeed it is justly considered an actual nuisance and it cannot be otherwise. It subjects the adjacent people to disease and the fear of infectious diseases. It offends the sight and the sense of smell by the collation of dead bodies that may be embalmed or held for post mortems and kept for a time more or less exposed. It tends to surcharge the atmosphere with gloom and sadness, pestilential fear and forebodings. It tends to drive mirth and cheerfulness from the homes of the people, for who can be cheerful and happy within view of a corpse or a funeral rite? Of course it is true that soon or late death, sadness, and gloom is the lot of all, but that is no reason why the misfortunes or calamities of others should be thrust upon the homes, the sense, and sight of any people.

The plaintiff claims the right to enjoy life, liberty, and property

without any restraint by the ordinance. But those whom he offends have equal rights with him and the maxim of law is that every man must so use his own rights as not to infringe on the rights of others. Comp. Laws, § 7248. The ordinance in question is very plain, simple, direct, and unambiguous. No one can misunderstand its import. It is simply that no one shall maintain a morgue or undertaking establishment in that part of the city which is used mainly for residences. Indeed to most people a morgue in the residence part of a city is more offensive than a livery stable. It is like unto a pest house. It lessens the value of all adjacent property. Without any ordinance the morgue in question might well be adjudged a nuisance.

Were the case one of doubt, which it is not, the injunction should not be granted. The case presents no equity. The plaintiff should have known well that he had no right to operate a morgue or undertaking business in that part of the city. The ordinance is clearly authorized by statute. It is reasonable, definite, and in no way ambiguous.