In the Matter of the Application of SIMON WERTHEIMER for a Peremptory Mandamus Order against FRANK X. SCHWAB, as Mayor, and JOHN H. MEAHL and Others, as Councilmen, Respectively, Comprising the Common Council of the City of Buffalo.

Supreme Court, Erie County, April 20, 1925.

Municipal corporations — city of Buffalo — resolution of common council granting permit to erect motion picture theatre on condition that petitioner secure consent of church on opposite side of street is invalid — consent of property owners not required in this case under Buffalo city ordinances, chap. 12, § 226 — common council was required to issue permit — zoning ordinance invalid — peremptory mandamus granted.

A resolution by the common council of the city of Buffalo granting to petitioner permission to erect a motion picture theatre on Hertel avenue on condition that he procure the consent of the authorities of a church on the opposite side of the street is invalid.

The location of the proposed theatre on that part of a street devoted to business structures was such as not to require the petitioner under section 226 of chapter 12 of the Buffalo city ordinances to procure the consent of property owners.

The alleged zoning ordinance which attempts to set apart residential districts without fixed areas having definite boundaries is invalid, and the ordinance attempting to give control of motion picture buildings in so-called residential districts which do not in fact exist must also fail.

Inasmuch as the common council had no discretion in the matter of granting permission to the petitioner to erect a motion picture theatre, a peremptory order of mandamus is granted.

APPLICATION for peremptory mandamus order to compel city of Buffalo to issue permit to erect building for moving picture theatre.

*John E. Barry,* for the petitioner.

*Frederic C. Rupp,* for the defendants.

HINKLEY, J.:

The petitioner asks that the defendants mayor and councilmen grant a permit to erect a building for moving picture purposes on premises located at No. 1400 Hertel avenue in the city of Buffalo.

The material facts alleged in petitioner's affidavit are without

dispute and no question of fact is presented calling for an alternative mandamus order.

Petitioner, in 1923, commenced the erection of buildings on Hertel avenue to be used for stores, offices and a theatre. The store and office building was completed, and petitioner petitioned the common council of the city of Buffalo, in the month of October, 1923, pursuant to chapter L, section 2, of the ordinances of the city of Buffalo, for permission to erect a theater building.

On November 21, 1923, the council passed the following resolution:

" Page 2528		No. 62
" BUFFALO, N. Y., *Nov.* 21*st,* 1923.

" Simon Wertheimer — No. 1400 Hertel Avenue — erect a one-story, fire proof building, 75 x 175, Moving Picture Theatre.

" Inasmuch as the northerly side of the street consists of buildings designed for business, there should be no material objections. It is recommended that the petition be granted subject to the condition, that the consent be obtained of the authorities of St. Margaret's R. C. Church, which is directly opposite.

" Received, filed and recommendation adopted.

" Ayes: Graves, Kreinheder, Meahl, Perkins and Schwab.

" Noes: None."

A study of this unique resolution presents many interesting questions. That it is fatally defective upon its face is readily apparent. The common council places in the hands of an unofficial body, the church authorities, the governmental function of granting or refusing a permit to petitioner to erect a moving picture theatre. It thereby gives to that unofficial body the power to arbitrarily deprive the petitioner herein of his vested interests in real property.

There is no claim that petitioner has not complied with all the building ordinances of the city of Buffalo except chapter L, under the authority of which the council presumed to act. Petitioner even procured from the council, on February 25, 1925, a suspension of that portion of section 192 of chapter XII of the city ordinances, so far as it might forbid the erection of petitioner's theatre, because no front is upon the public street.

The real excuse of the common council for not granting the petitioner an unqualified permit is that the location of petitioner's theatre is across the street from a church. This is apparent from the wording of the resolution and from the following undisputed facts alleged in petitioner's moving papers. On January 16, 1924, by written communication, the commissioner of parks and public buildings of the city of Buffalo notified the petitioner not to proceed, as he had been informed that petitioner had not obtained

permission to build from the church authorities. On February 26, 1925, when petitioner's architect applied to the permit clerk of the bureau of buildings, he was informed by that clerk that his orders were not to issue a permit until the written consent of St. Margaret Roman Catholic Church had been obtained, and that the permit was refused for no other reason. That when petitioner applied to the mayor for a reconsideration of the resolution, he was told by the mayor " that it was up to Father Timmons, and that petitioner must see Father Timmons and get his consent expressly." The Father Timmons referred to is the Reverend Father Thomas J. Timmons, rector of St. Margaret's Roman Catholic Church.

Had the granting of petitioner's permit been purely a discretionary act, the refusal upon the part of the members of the council to grant an unqualified permit might well have been held arbitrary, tyrannical, capricious and unreasonable, and mandamus would lie to correct such abuse of discretion. Particularly in view of the recent stipulation by the church authorities in a formal deed to the petitioner, that the church " will not object to or oppose the erection of such business block, but no part of such block shall at any time be used for a dance hall or poolroom." (*People ex rel. E. C. T. Club* v. *State R. Com.*, 190 N. Y. 31, 33; *Matter of Ormsby* v. *Bell*, 218 id. 212, 216; *People ex rel. Cosby* v. *Robinson*, 141 App. Div. 656, 658.)

This is, however, not an application for license to operate a moving picture theatre, as petitioner does not ask for relief under section 3 of chapter L of the city ordinances, which section provides a method of procedure to obtain a license to operate. *We are concerned only with the question of an application for a permit to erect a motion picture theatre.*

Legislation and its judicial construction must keep pace with advancing civilization. Much of the confusion of legislation and judicial precedent is due to the early Puritanical ideas that a theatre in and of itself is an inherent evil. Exhibition of moving pictures on the Sabbath was, as late as 1916, a crime. (Penal Law, § 2145; *People ex rel. Bender* v. *Joyce*, 174 App. Div. 574, 575.) That which was then a crime is no longer so designated. (Penal Law, § 2154.)

The enviable position of the modern theatre, in its accomplishment of moral uplift, is clearly indicated in the well-chosen language of the mayor in a recent written proclamation: " The theatre is recognized as a national institution, wielding a tremendous influence for general good in this country. It affords a recreation that is greatly advantageous, because it permits complete relaxation from business cares, keeping the mind occupied in a healthy way while the body is resting. There is also no question about the theatre

being an educational asset to our civic life of to-day. It portrays the customs, dress and life of this and other days, with both stageland and filmland playing equally active parts therein."

That motion picture exhibitions and theatricals can become evils is certain, but that relates to the question of license and regulation, with which we are not concerned upon this application. The power to regulate theatres, whether it be by statute or by the inherent police power of the State, has existed for many years. Yet it cannot be extended to yield the power to deny location, for that would extend the power to regulate to the extent of including the power to prohibit.

There is no statute or ordinance applicable to the petition herein which required that the petitioner obtain consent of other neighboring property owners, either before or after applying to the common council. There is only one ordinance concerning theatres which requires a consent of neighbors to build. That is section 226 of chapter XII of the city ordinances, which provides for consent of the owners of three-fourths of the entire frontage between two intersecting streets whenever a business or factory structure is to be erected in a block when four-fifths of the frontage between streets contains structures exclusively residential. The resolution expressly indicates that petitioner's premises are not affected by that ordinance by the following language, to wit: " Inasmuch as the northerly side of the street consists of buildings designed for business, there should be no material objection."

The common council was, therefore, required to issue a permit to petitioner, unless there was authority granted to the council to refuse such permit by virtue of chapter L of the city ordinances. That chapter is in the nature of a zoning ordinance. It is not authorized by the charter of the city, and was adopted under the authority conferred upon the city by section 20, subdivision 25, of the General City Law. It attempts to set apart residential districts without fixed areas having definite boundaries. Such attempt is unauthorized, and the ordinance attempting to give control of moving picture buildings in so-called residential districts which do not, in fact, exist, must also fail. Chapter CVIII of the city ordinances, which made a similar attempt to control factory buildings, has been held invalid. (*Matter of Kensington-Davis Corp.*, 239 N. Y. 54.)

There is no judicial sanction or legislative grant which vests in the common council either police power or legislative authority to prohibit the erection of a theatre in any particular locality. It follows that the common council has no authority to refuse to grant petitioner's permit because the location of his proposed theatre is

across the street from a church. To compel it to do that which it was required to do is not controlling its discretion, for it had no discretion so to act.

Order of peremptory mandamus must issue, in accordance with the prayer of the petitioner, with fifty dollars costs.