In the Matter of The **CITY OF CHEROKEE, A Municipal Corporation, Appellant,**

v.

**Aubrey P. TATRO, Appellee.**

No. 54865.

Supreme Court of Oklahoma.

Nov. 3, 1981.

Ed L. Moore, Ginder & Moore, Cherokee, for appellant.

Peter M. Keltch, Wright & Keltch, Cherokee, for appellee.

LAVENDER, Justice:

Appellee (Tatro) is the owner of two adjoining tracts of land within the city of Cherokee, Oklahoma, which tracts are located on Highway 64 in a residential area. Prior to the enactment of restrictive zoning ordinances by the City of Cherokee (City) Tatro erected and maintained an automobile service station on one of the lots. Tatro's adjoining lot is a vacant lot. Having received an attractive offer for the two lots provided Tatro was able to secure a valid building permit for the construction of a convenience store on both of the lots, Tatro applied to City's building inspector for such permit and his request was denied. Tatro applied to the local board of adjustment for a variance pursuant to 11 O.S.Supp.1978, §§ 44–101 through 44–110, and, upon hearing, the board of adjustment denied his application for a variance. Tatro appealed to the district court. Upon trial de novo being had before the district court, the district court held that the zoning ordinance under which Tatro sought the variance is unconstitutional and thereupon and for that reason directed City to issue to Tatro the building permit subject only to the restrictions on types of construction set forth in other ordinances of City. From the judgment of the district court, City appeals.

During the de novo trial before the district court, the pertinent ordinances of the City of Cherokee were introduced into evidence. The only ordinance which relates to the use of property within the municipality is ordinance No. 635 which was enacted in 1939, § 3 of which provides:

1. These sections are as follows:

"§ 401. Powers of cities and villages as to buildings.—For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of cities and incorporated villages is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes.

"§ 402. Districts—Uniformity of regulations—Telephone buildings excepted.—For any or all of said purposes, the local legislative body may divide the municipality into districts

"No person, firm or corporation shall maintain or operate a place of business, repair shop or junk yard within the *resident district of said city, and outside of the business district of said city*, without first obtaining a permit to do so from the City Commissioners. Upon written application therefore, showing the kind of business they intend to operate and the location thereof, and that they will comply with the City Ordinances of the City of Cherokee, and said application for said permit to operate said business *in the resident district of the City* of Cherokee shall be accompanied by consent in writing of 51% of the residents and owners of the property estimated by the front footage thereof, lying within 300 feet of the proposed location of said business." (Emphasis added.)

The statutory authority under which the ordinance was enacted is set forth in 11 O.S.1971, §§ 401, 402.[1]

Nowhere within the ordinance is there a definition of the term "resident district" and the ordinance is not accompanied by a metes and bounds, or legal description, or map or plat by which the geographical boundaries of a "resident district" may be determined.

In holding that a zoning ordinance is invalid if it fails to definitely fix the geographical boundary of use zones, the Delaware Supreme Court in *Auditorium, Inc. v. Board of Adjustment*, Del., 8 Terry 373, 91 A.2d 528 (1952), said:

of such number, shape and area as may be deemed best suited to carry out the purposes of this Act; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in other districts. Nothing in this section shall be construed to apply to telephone exchange buildings."

The foregoing sections have been amended since the enactment of the ordinance and are now set forth in 11 O.S.Supp.1977, §§ 43–101 and 43–102.

"All zoning ordinances establishing zone district boundaries, are required to do so within reasonable certainty so that the zone districts will have definite boundaries reasonably capable of being ascertained by the public and the administrative bodies charged with the enforcement of the ordinance. The establishment of zone district boundaries may not be left to the uncertainty of proof by extrinsic evidence. The boundaries must be definitely established by the ordinance itself. The establishment of zones is ineffective when the fixing of the boundaries of the zones is left to the ungoverned discretion, caprice or arbitrary action of municipal administrative bodies or officials . . . . Accordingly, we are of the opinion that if it is impossible by enlargement process or otherwise to (determine from within the ordinance itself the zone district boundaries), then the result with respect to the appellant's property is that it is unzoned."

■ The views expressed in *Auditorium, Inc., supra,* comport with the great majority of cases dealing with this subject,[2] and we deem it applicable to the case before us. There being no way in which it could be determined from within the wording of the Cherokee ordinance whether the Tatro property lay within the "resident district" and was thereby subject to use restrictions therein prescribed, there was no valid zoning ordinance to apply as against Tatro's contemplated use of his property.

City argues that since the appeal to the district court was from a refusal of the board of adjustment to grant Tatro a variance under the ordinance (which was demonstrably void on its face), that the district court had no power or jurisdiction in such proceedings to determine that the ordinance was unconstitutional, and hence, upon review this court has no jurisdiction or power to declare the ordinance unconstitutional. Tatro, having pursued proceedings for an exception to or variance from the purported ordinance, City urges, the district court could not consider anything except the ordinance and the facts surrounding the question of whether the situation demands an exception or variance from the ordinance in its application to the Tatro property.[3]

■ While we are mindful of those cases which hold that the district court, being restricted to a trial de novo of the issues properly before the board of adjustment, has no authority to consider or to rule upon the constitutionality of the City's zoning ordinance,[4] and of the cases which hold contra,[5] we hold that where, as here, the unconstitutionality of the ordinance appears clearly and patently on its face, that the district court has both the jurisdiction and the duty to so declare and to thereby determine that there is no valid zoning ordinance restricting the use of the Tatro property. To hold otherwise would be a vain and useless thing, to-wit, to attempt to render a judicial review of a granting or refusal to grant relief in the form of an exception to or variance from a zoning ordinance which is patently unconstitutional, and requiring the party thus denied to pursue his challenge to the constitutionality of the zoning ordinance in a separate suit, the outcome of which is a foregone conclusion.

Having determined that the district court correctly held that the ordinance which pur-

2. 39 A.L.R.2d 766.

3. 11 O.S.Supp.1977, §§ 44–101 through 44–110, as amended by 11 O.S.Supp.1978. See *McGrath v. Brown,* 190 Okl. 144, 120 P.2d 624 (1941); *Oklahoma City v. Harris,* 191 Okl. 125, 126 P.2d 988 (1941); *Board of Adjustment of Oklahoma City v. Shanbour,* Okl., 435 P.2d 569 (1968); *O'Rourke v. City of Tulsa,* Okl., 457 P.2d 782 (1969); *Bailey v. Uhls,* Okl., 503 P.2d 877 (1972); *Uhls v. Midwest Oil Corporation,* Okl., 521 P.2d 1370; *Banks v. City of Bethany,* Okl., 541 P.2d 178 (1975).

4. See 82 Am.Jur.2d *Zoning and Planning,* § 336, 136 A.L.R. 1396, et seq.

5. *Sugar v. North Baltimore Methodist Prot. Church,* 164 Md. 487, 165 A. 703 (1933); *Michigan-Lake Bldg. Corporation v. Hamilton,* 340 Ill. 284, 172 N.E. 710 (1930); *Union Trust Company v. Lucas,* Fla., 125 So.2d 582 (1960); *La-Salle National Bank v. County of Lake,* 27 Ill. App.3d 10, 325 N.E.2d 105 (1975).

ports to restrict and control Tatro's contemplated use of his property located within the city limits is void, it is not necessary to consider other specifications of error propounded by City.

AFFIRMED.

IRWIN, C. J., and HODGES, HARGRAVE and OPALA, JJ., concur.

BARNES, V. C. J., and SIMMS and DOOLIN, JJ., dissent.

SIMMS, Justice, dissenting:

I dissent to that portion of the majority opinion which expands the power of the district court to allow consideration of the constitutionality of a zoning ordinance in a de novo appeal, when that issue could not be entertained by the Board of Adjustment.