STATE of Missouri, ex rel. Robert E. PAYTON and Betty A. Payton, Respondents,

v.

CITY OF RIVERSIDE, Missouri and David E. Brenner, Mayor, et al., Appellants.

No. WD 32770.

Missouri Court of Appeals, Western District.

Aug. 3, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Oct. 5, 1982.

Application to Transfer Denied Nov. 15, 1982.

Don Witt, Robert Shaw, Platte City, for appellants.

Wilbur Pollard, Jack Norton, Kansas City, for respondents.

Before KENNEDY, P.J., and CLARK and MANFORD, JJ.

MANFORD, Judge.

This is an action in mandamus. This appeal follows a judgment ordering appellant city to issue a liquor license to respondents. The judgment is reversed.

■ Constitutional challenge has been made toward appellants' passage of a city ordinance upon the grounds of denial of due process and equal protection. Since this challenge does not involve a treaty or statute of the United States or a statute or provision of the Constitution of Missouri, jurisdiction lies with this court. Article V, Section 3, Missouri Constitution, as amended, 1976.

The record reveals the following pertinent facts. Appellant city is a city of the fourth class. The governing body of appellant city, The Board of Alderman (hereinafter referred to as the Board), enacted City Ordinance 80–17. This ordinance was the repeal and reenactment of the city liquor code. The new ordinance allowed the following:

"Section 4: RESTRICTION ON NUMBER ISSUED. The number of licenses issued for the sale of alcoholic liquor by the City shall be limited as set forth in this section:

. . . .

ALL INCLUSIVE LICENSE (EXCEPT SUNDAY)—There shall be not more than seven (7) all inclusive licenses in the City of Riverside, Missouri."

In a preceding provision (Section 3—Classification) all inclusive licenses are defined as:

"ALL INCLUSIVE LICENSE (EXCEPT SUNDAY)—An all inclusive license shall authorize sale for consumption on-premises by the drink and for consumption off-premises in original package."

At the time of passage of the above ordinance (80–17) seven all-inclusive licenses had been issued and were active. On June 30, 1980, two of the seven all-inclusive licenses expired and the holders of these licenses did not endeavor to renew them. These two licenses remained unissued from July 1, 1980 until August 19, 1980. At a regular Board meeting August 19, 1980, the Board adopted Ordinance 80–22. This second ordinance amended Ordinance 80–17, Section 4, Chapter 3 of the liquor code to read as follows:

"ALL INCLUSIVE LICENSE (EXCEPT SUNDAY)—There shall be not more than five (5) all inclusive licenses in the City of Riverside, Missouri."

The record further reveals respondents to be owners of real property within the appellant city. This property contained a building, part of which was used as a bar for dispersing alcoholic beverages. The bar was known as the Cellar Bar. The evidence revealed a bar operation for at least 15 years and perhaps for as long as 40 years. For approximately seven years preceding these proceedings, the premises had been leased by respondents to one Shepherd. Shepherd operated the Cellar Bar and held an all-inclusive license.

On May 31, 1980, Shepherd's lease ended and on or about June 3, 1980, respondents filed an application for an all-inclusive license. The evidence was controverted as to whether the application was complete and in proper form. Respondents claimed the application complied with the requirements of the code, but appellant city alleged the application had many discrepancies. Respondents' application was never acted upon by the Board.

Respondents with their counsel appeared at various Board meetings relative to their pending application. On August 5, 1980, the Board appointed a three member committee to inspect the Cellar Bar. These committee members testified they found the Cellar Bar "gutted" and in other ways deficient. Respondents offered to improve the premises and to post a $50,000 bond as a guarantee of performance.

On August 19, 1980, at a regular meeting the Board adopted Ordinance 80–22 reducing the number of all-inclusive licenses from seven to five. The Board did not vote on respondents' application because in the Board's view no more all-inclusive licenses were available. Respondents filed this action September 18, 1980. The case was tried to the court March 27, 1981. On May 21, 1981, the trial court issued its order directing appellant city to issue respondents an all-inclusive liquor license. This appeal followed.

Several points have been presented, but due to the disposition herein only one is considered. Appellant city, in summary, charges the trial court erred in its findings, conclusions and judgment in holding that standards or criteria were needed to guide the Board in its determination to reduce the permitted number of liquor licenses because such standards and criteria are not in its control or exercise of legislative discretion.

Appellant challenges the following conclusions of law:

"6. That the members of the Board of Aldermen and the Mayor of the City of Riverside, in the adoption of the amendment of August 19, 1980, used no standards, guidelines, or criteria in their consideration of the reduction in number of 'all inclusive' licenses.

7. That the Liquor Code of the City of Riverside, including Ordinance 80–17 and the amended Ordinance 80–22 contained no guidelines, criteria, standards or statements as to when liquor licenses should be reduced.

8. That because Ordinance 80–17 and the amendments thereto contained no standards, guidelines or criteria for the reduction of the number of liquor licenses in the City of Riverside, any attempt to reduce the number of liquor licenses in any class is left entirely to the discretion, caprice and whim of the members of the Board of Aldermen and Mayor of the City of Riverside.

10. That the Liquor Code of the City of Riverside in effect as of August 19, 1980, contains no guidelines, standards or criteria by which the governing body of the City of Riverside may determine whether or not a liquor license application should be granted for those establishments having restaurants in connection with the dispensing of liquor."

The real question which underscores the issue and which neither party herein has chosen to answer is, if there are requisite standards and criteria, then by whom or from what authority are they to originate? In light of the final determination made herein, the question goes unanswered. It must be borne in mind this case deals with the issuance or withholding of a liquor license. More basic is the challenge to the actions taken by the legislative body of a city of the fourth class. No municipal corporation has inherent powers regarding the .control or regulation of intoxicating liquor since their powers are derived from and subject to our state Liquor Control Act. Chapter 311, R.S.Mo.1978, *Kopper Kettle Restaurants, Inc. v. City of St. Robert,* 439 S.W.2d 1 (Mo.App.1969). The area of intoxicating liquor has always been approached and treated by the law differently than other social-economic pursuits and has been separated and removed from the natural rights, privileges and immunities of ordinary citizens. *Kehr v. Garrett,* 512 S.W.2d 186 (Mo.App.1974). It has been declared that persons who engage in the liquor business have no inherent right to do so and the state may impose conditions, burdens and regulations as is deemed wise and proper. *May Department Stores, Inc. v. Supervisor of Liquor Control,* 530 S.W.2d 460 (Mo.App. 1975). The various municipal corporations within our state expressly derive their power in this area from the state and where.a statute grants such power without specification as to the method or details in the exercise of such power, the local governing body may exercise, in any reasonable and proper manner, the power granted. *Petition of City of Liberty,* 296 S.W.2d 117 (Mo.1956) (en banc); *City of Bellefontaine Neighbors v. J.J. Kelley Realty and Bldg. Co.,* 460 S.W.2d 298 (Mo.App.1970); *City of Flordell Hills v. Hardekopf,* 271 S.W.2d 256 (Mo.App.1954). If an ordinance is susceptible to any reasonable construction which will sustain it, it will not be declared void for uncertainty. *Liberman v. Cervantes,* 511 S.W.2d 835 (Mo.1974). Where an ordinance appears within the scope of delegated police power, the courts will not substitute their discretion for that of the legislative body which enacted the ordinance. *Meyer v. St. Louis County,* 602 S.W.2d 728 (Mo. App.1980). This is especially applicable to purely legislative acts of municipal corporations. *Windle v. Lambert,* 400 S.W.2d 89, 93 (Mo.1966); *Kansas City v. Brown,* 286 Mo. 1, 227 S.W. 89 (1920).

■ "It is well established that cities *may* fix standards to be met before issuing a liquor license, the only requirement being that the ordinance must not conflict with the state statute." *State ex rel. Southland Corp. v. City of Woodson Terrace,* 599 S.W.2d 529, 530 (Mo.App.1980). No conflict arises from an ordinance which supplements and expands requirements of a statute unless the statute limits the requirements for all cases to its own prescriptions. *Crackerneck Country Club, Inc. v. City of Independence,* 522 S.W.2d 50 (Mo.App.1974).

This point was precisely defined in *State v. City of St. Robert,* 424 S.W.2d 73, 79 (Mo.App.1968), wherein the court declared:

"The Liquor Control Act does not preclusively regulate, but on the contrary, specifically authorizes municipalities to enact regulatory ordinances [§ 311.-220(a)] which are in harmony with the statutory law and are not unreasonable. There is not and could not well be any contention that the board of aldermen of St. Robert . . . acted unreasonably in limiting the number of by-the-drink licenses to ten; and being in no wise inharmonious with the Liquor Control Act, that undoubtedly was a valid regulatory measure."

■ Appellant cites to this court *Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corporation,* 518 S.W.2d 11 (Mo.1974) for the proposition the courts should not interfere with legislative determination of a municipal corporation when a basis for the exercise of such discretion exists. It is correct that *Parking Systems, supra,* does declare such a rule and that our state Supreme Court proceeded further by holding that such an ordinance benefits from a rebuttable presumption of validity. However, while an ordinance may be valid in general terms, it might be, under a given set of circumstances, held to be arbitrary or unreasonable. The court also restated the long accepted principle that no ordinance can be held valid which is contrary to state statute.

The last two rules within *Parking Systems* serve as the basis of respondents' argument of claimed error. From *Parking Systems,* it is also clear that weighed against the foregoing principles, each case must be decided upon its own particular facts and circumstances.

Respondents present a multiple rebuttal to appellants' argument. In summary, they argue (1) the actions of the Board and enactment of the ordinance were arbitrary and unreasonable and denied respondents constitutional due process and equal protection; (2) the Board should have followed prescribed standards and criteria; and (3) the ordinance is in conflict with Chapter 311, R.S.Mo.1978.

■ The second of respondents' arguments is addressed first. The trial court herein concluded appellant city was required to apply standards and criteria in the enactment of Ordinance 80–22. This was error. Research fails to find any such requirement within *Chapter 311, supra,* nor any decisional authority for such a requirement. It is correct that an ordinance which vests discretion in administrative officials must generally include standards for their guidance in order to be constitutionally acceptable but *such principle applies to the delegation of authority to administrators and not to the exercise of substantive legislative functions by a political body.* Clay v. City of St. Louis, 495 S.W.2d 672, 676 (Mo.App.1973). It should be further noted that in *Clay* the court delineated the following three exceptions to the general rule: (1) where the ordinance deals with situations which require the vesting of some discretion in public officials; (2) where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare; and (3) where personal fitness is a factor to be considered. Stated another way, the court in *State ex rel. Mackey v. Hyde,* 315 Mo. 681, 286 S.W. 363, 366 (1926) (en banc) declared:

"On the other hand, it is equally well settled that statutes or ordinances prescribe a rule of action where they deal with situations which require the vesting of some discretion in public officials as

for instance where it is difficult or impracticable to lay down a definite comprehensive rule; or where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare."

■ In the instant case, a reading of the ordinance clearly reveals it does not involve any delegation. But even if it did, it would in all probability be exempt within (2) above under the ruling in *Clay.*

In sum, there is no authority for the trial court's conclusions and the judgment based thereon, that standards and criteria must be prescribed since the action by the Board in the enactment of the ordinance was within the legitimate exercise of legislative discretion.

As regards respondents' challenge based on the constitutional deprivation of due process and equal protection; a quick review of the evidence dispels and challenges respondents' constitutional argument. Such argument is grounded upon the claim that appellants' actions were arbitrary, confusing and unreasonable. While couched in terms of constitutional deprivation, respondents' argument really falls within the rules discussed above as outlined in *Parking Systems, supra.* It should be further noted that respondents' argument is buttressed by the argument that the ordinance did not contain standards or criteria. This portion of respondents' argument has already been disposed of above.

■ Respondents argue that the record reveals the only reason for the reduction of the all-inclusive licenses was the Board's position of not favoring the issuance of any additional license unless there was a restaurant affiliated with the dispensing of liquor. The record reveals that the Mayor and Board members testified they preferred the establishment of a nice restaurant or restaurants and that if such were presented, they might consider changing Ordinance 80–22. In addition to this testimony, however, the Mayor and the Board members also testified of their concern about police activity, traffic and other problems attending to liquor establishments in the community. The evidence upon this point illustrates several reasons for the ordinance, including the general public making their opinions known to the officers of appellant-city regarding the number of liquor establishments in the city, and the preference for a "nice" restaurant in the city. This court cannot agree with respondents' conclusion that the evidence upon the whole of the record reveals the actions by appellant, through its duly elected officials, to have been unreasonable or capricious or to have denied respondents any constitutional right of due process or equal protection under the law.

■ In summary, the record reveals that respondents filed their application for an all-inclusive license and that there is conflicting evidence whether the application was complete and proper in all respects. During the pending of the application, appellant, for a variety of reasons including the health, welfare and morals of the community, enacted Ordinance 80–22. It is true that appellant foreclosed further action on respondents' application. However, this result alone does not make appellant's actions unreasonable, capricious or arbitrary. *See, Cannon v. Richland Parish Police Jury,* 338 So.2d 1188 (La.App.1976). Respondents possessed no property interest, subject to the claimed constitutional safeguard, in the pending application. *Peppermint Lounge, Inc. v. Wright,* 498 S.W.2d 749 (Mo.1973); *State ex rel. Garrett v. Randall,* 527 S.W.2d 366 (Mo.1975) (en banc). In passing, it should be noted that respondents cannot prevail upon a claim of unconstitutional discrimination as a suspect class because the evidence reveals that other applicants for licenses were affected in the same manner as respondents. *See, Personal Administration of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979);· and *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Respondents also possessed no vested right in having the number of all-inclusive licenses remain unchanged. *Curators of Central College v. Rose,* 182 S.W.2d 145 (Mo.1944);

*City of St. Louis v. Cavanaugh,* 357 Mo. 204, 207 S.W.2d 449 (1947); and *State ex rel. Oliver Cadillac Company v. Christopher,* 317 Mo. 1179, 298 S.W. 720 (1927) (en banc).

The evidence upon the whole record reveals the Board on behalf of appellant city did not act (by virtue of enactment of Ordinance 80–22) in an unreasonable, discriminatory or capricious fashion either to deny respondents constitutional due process or equal protection. Nor did such actions rebut the presumption of legislative validity as set forth in *Parking Systems, supra.*

As to respondents' final rebuttal [(3) above], review of *Chapter 311* reveals nothing which prohibits the reduction of the number of liquor licenses by appellant city.

 Respondents charge that the ordinance conflicts with § 311.220(2) R.S.Mo. 1978. That section reads:

"2. The board of aldermen, city council or other proper authorities of incorporated cities, may charge for licenses issued to manufacturers, distillers, brewers, wholesalers and retailers of all intoxicating liquor, located within their limits, fix the amount to be charged for such license, subject to the limitations of this law, and provide for the collection thereof, make and enforce ordinances for the regulation and control of the sale of all intoxicating liquors within their limits, provide for penalties for the violation of such ordinances, where not inconsistent with the provisions of this law."

The mere reading of the foregoing statute does not reveal the conflict alleged by respondents and set forth in the court's judgment. This question was precisely laid to rest in *City of St. Robert, supra. City of St. Robert* must be, of course, weighed in light of *Parking Systems.* In the instant case, Ordinance 80–22 is found not to conflict with § 311.220(2) and it was error for the trial court to have so concluded. As has been pointed out, appellants' actions, by and through their duly elected officials, did not violate the prohibition prescribed in *Parking Systems.*

In summary, respondents applied for an all-inclusive liquor license. When this application was pending, the completeness of which was disputed by appellants, the City enacted Ordinance 80–22. This was a legislative act, not requiring the prescription of standards or criteria. The evidence reveals the duly elected representatives of appellant city had varied reasons for the reduction of the number of licenses and that their actions were not unreasonable or capricious.

The trial court erred as a matter of law in rendering judgment upon the conclusion that prescribed standards or criteria were necessary for a purely legislative act.

The judgment is for the reasons set forth herein reversed in all respects.

All concur.