STATE of Missouri, ex rel. CASEY'S
GENERAL STORES, INC.,
Relator-Appellant,

v.

CITY COUNCIL OF SALEM, Missouri,
Mayor Clarence Inman, Ruth Mullnack, Ray Weaver, Bill Riley, Jr., Russell Weller, and Nadine Victor, City
Clerk, Respondents.

No. 13685.

Missouri Court of Appeals,
Southern District,
Division Three.

Oct. 21, 1985.

John S. Beeler, Houston, for relator-appellant.

Jerry L. Wilkerson, Salem, for respondents.

PREWITT, Chief Judge.

The Board of Aldermen of Salem refused to issue a liquor license to appellant because of the location of the store where the license would be exercised. The Board contended that refusal was based on a city ordinance prohibiting the issuance of a liquor license to a store "located outside the business district of the city."

Appellant brought mandamus seeking to compel the issuance of the license. After issuing a preliminary order, the trial court held an evidentiary hearing. Appellant claimed that the ordinance upon which the board relied was too vague and indefinite to be valid, but that if the ordinance was valid, the location of its store was within a "business district". The trial court held the ordinance valid and found that appellant's proposed location was outside a business district. The relief sought was denied.

On appeal appellant contends that the trial court erred because the ordinance limiting the issuance of license to places within "the business district of the city" is unconstitutionally vague and indefinite and thus susceptible to arbitrary and unreasonable enforcement.

Mandamus is a proper action to obtain a liquor license which has been wrongfully withheld. *State ex rel. Kopper Kettle Restaurants, Inc. v. City of St. Robert,* 424 S.W.2d 73, 80 (Mo.App.1968). To be successful in mandamus relator must establish a "clear and unequivocal" right to the relief requested. *State ex rel. Jay Bee Stores, Inc. v. Edwards,* 636 S.W.2d 61, 62 (Mo. banc 1982).

A relator may appeal from an adverse final determination in mandamus if a preliminary order was issued. See *Hunter v. Madden,* 565 S.W.2d 456, 457 n. 1 (Mo. App.1978). On appeal mandamus is reviewed as other nonjury civil matters. *State ex rel. Mayfield v. City of Joplin,* 485 S.W.2d 473, 475 (Mo.App.1972).

Under its ordinances, Salem provides that liquor can only be sold if a license to sell it is granted by the Board of Aldermen. The ordinance which respondents say prevents appellant from being entitled to a license states:

No licenses shall be issued for the sale of intoxicating liquor or nonintoxicating beer at retail in the original package where the place of such business sought to be licensed, according to the application for such license, is located outside the business district of the city.

There is no definition in the ordinances of Salem defining or describing "the business district of the city". Respondents' brief states that there are two separate business districts in the city, both of which have businesses that were issued liquor licenses. Salem has no comprehensive zoning plan. The transcript of testimony at trial indicates that the aldermen "accepted and adapted" a "Comprehensive Community Plan" in 1971. In 1977 the Board of Aldermen made "changes" to the plan. Apparently appellant's store was to be located in an area designated on the plan as "single family residential".

When reviewing an ordinance we start with the presumption that it is valid. *Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corp.,* 518

S.W.2d 11, 16 (Mo.1974). That presumption is rebutted if the ordinance is unreasonable or vague. Id. See also 5 McQuillin, Municipal Corporations, § 15.24 (rev.3d ed. 1981). An ordinance under the police power for the general welfare must be sufficiently definite "to provide those charged with its administration with a clear standard which operates uniformly and avoids arbitrary enforcement." *City of Independence v. Richards*, 666 S.W.2d 1, 7 (Mo.App.1983).

■ An ordinance which forbids or requires the doing of an act in terms so vague that persons of common intelligence must guess at its meaning and would differ as to its application, is void for vagueness. *Ferguson Police Officers Ass'n v. City of Ferguson*, 670 S.W.2d 921, 927 (Mo.App. 1984). The void for vagueness doctrine applies to civil as well as criminal matters. Id.

■ A city has broader powers to limit or restrict those selling liquor than those engaged in other businesses. See § 311.-220.2, RSMo 1978; *State ex rel. Payton v. City of Riverside*, 640 S.W.2d 137, 140–141 (Mo.App.1982); *State ex rel. Kopper Kettle Restaurants, Inc. v. City of St. Robert*, supra, 424 S.W.2d at 79. However, that authority does not give the city the power to base limitations on an ordinance that is vague or uncertain. In that respect an ordinance regulating liquor licenses must meet the same standards as any other ordinance.

■ This ordinance attempts limited or partial zoning by setting forth where there can be liquor stores. See 8 McQuillin, Municipal Corporations, § 25.81 (rev.3d ed. 1983). The universal rule in reviewing zoning ordinances is that to be valid districts must be described with reasonable certainty and have definite boundaries. *Slattery v. Township of Caldwell*, 83 N.J.Super. 317, 199 A.2d 670, 671 (1964). See also *State v. Huntington*, 145 Conn. 394, 143 A.2d 444, 447 (1958) (Boundary lines must be fixed by the regulations and not by administrative officials or courts); *Application of the McDaniel Motor Co.*, 116 Ohio App. 165, 187 N.E.2d 418, 423 (1962) (holding same); 8 McQuillin, supra, § 25.89; Annot., Validity of zoning regulations, with respect to uncertainty and indefiniteness of district boundary lines, 39 A.L.R.2d 766 (1955); Annot., Zoning regulations in respect to intoxicating liquors, 9 A.L.R.2d 877, 886 (1950).

In *City of Cherokee v. Tatro*, 636 P.2d 337 (Okla.1981), an ordinance prohibiting the operation of "a place of business, repair shop or junk yard within the resident district of said city, and outside of the business district of said city" without a license was questioned because there was no definition of the residential district or a legal description or map or plat by which the boundaries of the residential and business districts could be determined. Following the general principle set forth in the above paragraph and stating that those views "comport with the great majority of cases dealing with this subject", the court held the ordinance invalid. 636 P.2d at 339.

■ Other ordinances, not expressly purporting to be "zoning ordinances", which have attempted to restrict the location of certain types of businesses have been held invalid for indefiniteness. See *City of St. Paul v. Schleh*, 101 Minn. 425, 112 N.W. 532, 533 ("Residence district" not defined; "difficult matter to locate any definite line between the business and residence sections"); *Wertheimer v. Schwab*, 124 Misc. 822, 210 N.Y.S. 312, 316 (1925) (limitation on location of motion picture theater an attempt "to set apart residential districts, without fixed areas having definite boundaries"); *Wasem v. City of Fargo*, 49 N.D. 168, 190 N.W. 546, 547–548 (1922) (providing that no undertaking establishment can be located in areas "occupied mainly for residence"). But see *Rowland v. City of Greencastle*, 157 Ind. 591, 62 N.E. 474 (1902) and *Shea v. City of Muncie*, 148 Ind. 14, 46 N.E. 138 (1897) (where ordinances prohibited sale of liquor outside of business district, such district's boundaries can be a factual determination by the courts). We disagree with the holding in these latter two cases. Determining "the business dis-

trict" is a legislative function which should not be left to the courts without specific guidelines. The Missouri decisions earlier cited require more definiteness than that contained in the ordinances considered in *Rowland* and *Shea.*

There are areas in most, if not all, towns and cities that everyone would agree was a business district, if perhaps not "the business district". Where such an area ends would often be questionable and persons of common intelligence and reasonable views might differ on it. There could also be areas where reasonable persons may differ on whether it is a "business district".

In determining if a lot is within a business district several questions could arise. Is a business district an area where there are no residences or where more than half of the structures are used for business? Could an area be a "business district" if persons reside in the area, either where separate structures are used as residences or where families reside in a building housing a business? Must a business district contain a minimum number of businesses within a certain geographical area and if so, what is that number and that area? Where, as here, a city has at least two business districts, does "the business district" refer to one or more of the districts or to all of them? These are questions upon which reasonable minds and persons of common intelligence could disagree.

Salem's comprehensive plan cannot be used to supply these answers. The ordinance does not refer to the plan or purport to use it to determine where the business district or districts are. Such a plan, without regulatory implementation, does not impose restrictions on the use of property. *Toandos Peninsula Ass'n v. Jefferson County,* 32 Wash.App. 473, 648 P.2d 448, 452 (1982).

■ At least in certain situations, the instant ordinance gives the Board of Aldermen wide discretion in deciding whether to issue the liquor license. That discretion might be exercised arbitrarily and could be subject to abuses for personal reasons, religious beliefs, or other factors not properly relevant. The ordinance in question here is too indefinite to be valid.

The judgment is reversed and the cause remanded to the trial court and it is directed to enter judgment ordering respondents to issue the requested license to appellant.

FLANIGAN and MAUS, JJ., concur.

CROW, P.J., concurs and files concurring opinion.

CROW, Presiding Judge, concurring.

I concur in the principal opinion, but find it necessary to comment on a troublesome aspect of this case that was not addressed by respondents, either at trial or on appeal. The parties agree, in their briefs, that the City of Salem, by ordinance, authorizes one license to sell intoxicating liquor at retail for each 750 inhabitants, as established by the last United States census. The briefs make it clear that when relator applied for a license on September 10, 1983, one license was available. The briefs further reveal that at time of trial on February 1, 1984, no license was available. We infer from this that the license that had been available on September 10, 1983, was issued to another applicant sometime between October 17, 1983 (the date the Board of Aldermen voted to deny relator's application), and February 1, 1984.

Relator filed this suit January 12, 1984. We cannot ascertain from the record whether the license that had been available when relator applied was issued before or after relator filed suit. It is possible, obviously, that such license was issued during the 86-day interval between the Board's denial of relator's application and the filing of suit. It is just as possible, of course, that it was issued while relator's suit was pending.

Be that as it may, it appears that unless a license is presently available, the effect of our holding will be to compel respondents to issue a liquor license in excess of the number authorized by ordinance.

Respondents, however, did not assert that as a defense in their answer or at trial,

nor do they do so on appeal. Consequently, it is unnecessary to decide whether the limit on the number of licenses established by ordinance can be overridden by a court decree in circumstances such as those here, and my concurrence should not be construed as suggesting that a court has such authority. Resolution of that issue must await a case in which it is properly raised.