2001 OK 40

Thomas M. DEWEY and Thomas J. Riddle, for themselves and as class representatives of all other similarly situated retired firefighters, Appellees,

v.

STATE of Oklahoma, ex rel. OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, Appellant.

No. 92,726.

Supreme Court of Oklahoma.

May 8, 2001.

As Corrected May 29 and 30, 2001.

Rehearing Denied July 3, 2001.

James R. Moore and Patrick Hunt, James R. Moore and Associates, Oklahoma City, OK, for Appellees.

Marc Edwards and Dionna D. Deardorff, Phillips McFall McCaffrey McVay & Murrah, Oklahoma City, OK, for Appellant.

LAVENDER, J.

¶ 1 Resolution of today's cause requires the Court to assess in what capacity a district court acted when *in a single case* it both (1) *reviewed* an administrative agency's order entered in an individual proceeding and (2) *entered judgment* in favor of a certified class of litigants whose substantive claim included the same legal subject as that encompassed in the appealed agency-order. Oklahoma Firefighters Pension and Retirement Board's [appellant or Board] appeal challenges the district court's authority to enter an order [1] which embraces issues outside those posed by the submitted record of the agency's adjudication of Dewey's claim. Specifically, Board asserts that the district court was without authority (1) to determine an applicable statute of limitations' effect and (2) to enter an award of prejudgment interest. [2] Since the district court was sitting *both* as an *appellate body* (when it reviewed the Board's June 16, 1995 final order) and as a *court of first instance* (when it ruled on the class' application for declaratory relief), we conclude that the district court (1) was without authority as an appellate body to enter a judgment addressing issues outside the scope of the final order entered in the agency's adjudication of Dewey's claim but (2) was within the scope of its jurisdiction when it entered the February 12, 1999 order enforcing its earlier judgment in the class' favor.

---

1. The trial court nominated its February 12, 1999 order a "Journal Entry of Judgment." The appealable order was rendered in response to appellees' *motion to enforce judgment* filed on October 31, 1997, seeking enforcement of the district court's February 5, 1997 judgment. Because there can be but one judgment in a case or cause, the appealed-from order is a postjudgment enforcement order.

2. Board asserts that the recalculations required by the district court's earlier remand were never finalized and that without a "final order" there is no jurisdictional basis for Judge Ricks' February 12, 1999 postjudgment order, the subject of today's appeal.

Hence, the order in issue is reversed in part and affirmed in part.

## I

### FACTS AND PROCEDURAL HISTORY

■ ¶2 Dewey first became eligible for retirement as a firefighter on August 1, 1991. On February 4, 1994 Board received Dewey's claim—brought as a "war veteran" under the terms of 72 O.S.1991 § 67.13a—to have included in his accrued credited service (as a firefighter) his earlier military service, i.e., military service completed *before* he entered the firefighters retirement system.[3] Accrued credited service is a determinant of retirement benefits. On June 16, 1995 Board denied Dewey the requested credit, ruling that the terms of 11 O.S.1991 § 49-138 only allow credit for military service completed *after* a firefighter's entry into the retirement system.

■ ¶3 On July 7, 1995 Dewey [and Riddle], individually and as class representative for those firefighters who met the statutory-definition of "war veteran," brought *both a suit and an appeal* [under a single case number] from the Board's denial (of a military-service credit) to the district court. The class was certified on July 18, 1996 by an order *approved by all parties.* Judgment was entered on March 5, 1997 directing that firefighters—who were "war veterans" under the terms of 72 O.S.1991 § 67.13a and retired after its effective date (June 29, 1981)—were entitled to enhancement of their accrued credited service through consideration of

their military service, regardless whether the pensioner's military service occurred *before or after* entry into the retirement system. The matter was remanded to the Board to perform the necessary recalculation of retirement benefits for Dewey and other affected class members. While an appeal was taken from the district court's March 5, 1997 decision by one class representative (Thomas J. Riddle) on grounds different from those asserted today,[4] Board did not appeal from certification of the class or otherwise contest the judgment entered in the class' favor within thirty (30) days of it being filed. The March 5, 1997 judgment is now final and absolute.

¶4 Upon remand Board recalculated class members' retirement benefits. Eligible pensioners' retirement benefits were enhanced both retrospectively and prospectively from February 5, 1995 [5] through consideration of individually-appropriate, military-service credits. Board made no allowance for pre-judgment interest in its computations. Both Dewey and class members took issue with the parameters within which Board made its retroactive recalculations, and by a October 31, 1997 motion sought enforcement of the district court's earlier judgment. The earlier *judgment* did not address: (1) what the applicable statute of limitation was; (2) from when it ran, i.e., the accrual date for eligible class members' claims; or (3) the class' entitlement to and calculation of prejudgment interest.

¶5 The trial court's February 12, 1999 postjudgment enforcement order directs that corrected benefits for Dewey and *all* eligible class members, plus prejudgment interest, be

---

3. Board argued during the hearing on Dewey's motion to enforce that the paperwork which Dewey submitted to the Board on February 4, 1994 was merely a survey and did not rise to the level of a claim. Board asserts that the July 21, 1994 demand letter from Dewey's lawyer was in fact Dewey's initial claim for military-service credit and that it came to Board during the hiatus effected by House Bill 2228. [*See infra* note for a synopsis of H.B. 2228's provisions.]

4. See the April 7, 1998 unpublished opinion of the Court of Civil Appeals in Cause No. 89,032 in *Dewey et al v. State ex rel. Oklahoma Firefighters Pension and Retirement System.*

5. H.B. 2228, effective July 1, 1994 and codified as 11 O.S.Supp.1994 § 49-100.3G, prohibited

Board from either granting retirement benefits or making payment on a liability to Oklahoma firefighters if such expenses were not earlier included in the Board's actuarial report to the Legislature. The actuarial reports submitted by Board for the period covered by H.B. 2228 did not reflect liability for the pensioners' military-service credits in issue today. H.B. 2228 expired by its own terms on February 5, 1995. Board asserts that it is appropriate to use House Bill 2228's expiration date (February 5, 1995) as the required marker for figuring corrected benefits for eligible class members because it was only after the expiration of H.B. 2228's terms—which precluded Board from granting or paying for military-service credits to firefighters during the period of their legal efficacy—that Board could make the adjustments sought by Dewey's claim.

paid from February 4, 1991 [a date which is three years antecedent to the filing date of Dewey's administrative claim] until *February 5, 1997*—the trial court's "ruling date."[6] *Class and Board both agree* that today's action is governed by the three-year statutory limitation period for actions upon a liability created by statute.[7]

¶ 6 Board appealed from the trial court's enforcement order on March 5, 1999. Class filed a counter-appeal on March 11, 1999, asserting that some class members (those in a deferred option plan) were—contrary to the enforcement order's terms—entitled to a higher rate of prejudgment interest. Class rests its argument upon the terms of 11 O.S.1991 § 49-106.1(E)(2).[8]

## II

### THE STANDARD OF REVIEW

¶ 7 In today's cause the Board questions the district court's jurisdiction; and Dewey and the class members raise issues of adjective law concerning application of the appropriate limitations period and entitlement to interest on their judgment. The primary focus of today's appeal is the district court's resolution of these issues through its postjudgment enforcement order and as such essentially presents questions of law which are reviewed de novo.[9] An appellate court has plenary, independent and non-deferential authority to reexamine a trial court's legal rulings.[10]

¶ 8 To the extent that today's cause questions the district court's jurisdiction in entering its postjudgment order [in the context of an appeal brought from an administrative order entered in an "individual proceeding"] the provisions of the Oklahoma Administrative Procedures Act [OAPA], 75 O.S.1991 § 250 et seq., as amended, govern the Court's review.[11]

## III

### AS TO DEWEY'S INDIVIDUAL CLAIM, THE DISTRICT COURT WAS WITHOUT AUTHORITY TO ENTER ITS ENFORCEMENT ORDER WHICH ADDRESSED ISSUES OUTSIDE THE RECORD SUBMITTED OF THE INDIVIDUAL PROCEEDING

¶ 9 The Court begins its analysis by assessing the nature of the legal proceedings prosecuted by the parties before the district court. This is made difficult by the fact that the district court's March 5, 1997 judgment, which is *final and now absolute*, simultaneously addresses under a single case-number two different proceedings on the same subject [the availability of a military-service credit for firefighters who are war veterans and also possess vested interests in the firefighter-retirement system]. The parties' failure to comprehend the judgment's dual nature—i.e., as (1) a judgment which embodies an appellate opinion and (2) a decision on a class' application for declaratory relief—re-

---

6. The journal entry of judgment in this cause was rendered on February 5, 1997. Nonetheless, it was not filed with the district court clerk until March 5, 1997. The trial court in its postjudgment enforcement order refers to the earlier date as its "ruling" date.

7. 12 O.S.1991 § 95 (Second). While the class agrees with the three-year limitation period, it asserts that a trust-like relationship exists between itself and Board which requires Board to repudiate the trust to trigger the running of the limitations period. It is the class' position that the triggering event has never occurred and hence there is no effective time-bar to any of its members' claims.

8. The terms of 11 O.S.1991 § 49-106.1(E)(2) provide:

   A member who participates in this plan shall earn interest at a rate of two percentage points below the rate of return of the investment

portfolio of the System, but no less than the actuarial assumed interest rate as certified by the actuary in the yearly evaluation report of the actuary. The interest shall be credited to the individual account balance of the member on an annual basis.

9. *K & K Food Services, Inc. v. S & H, Inc.*, 2000 OK 31, ¶ 7, 3 P.3d 705; *Keith v. Mid-Continent Petroleum Corp.*, 1954 OK 196, 272 P.2d 371 syl. 2.

10. *Rivas v. Parkland Manor*, 2000 OK 68, ¶ 6, 12 P.3d 452, 455; *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 2000 OK 55, ¶ 4, 11 P.3d 162, 166.

11. *City of Tulsa v. State ex rel. Public Employees Relations Bd.*, 1998 OK 92, ¶ 12, 967 P.2d 1214, 1219.

sults in a failure to understand the full nature of the district court's March 5, 1999 postjudgment enforcement order.

¶ 10 Dewey, as an individual, brought a petition for review of Board's June 16, 1995 order entered in the individual proceeding on his administrative claim. His appeal from the agency's final order under the OAPA's provisions invokes the district court's appellate jurisdiction.[12] In response to his appeal the district court entered its March 5, 1997 judgment and the same is final and today beyond the reach of the Court's appellate jurisdiction. Neither Dewey nor the Board can *now* be heard for the first time to appeal the judgment, its terms and provisions.

¶ 11 Dewey's appeal to the district court from the Board's order denying his claim was necessarily brought under the terms of 75 O.S.Supp.1992 § 318(A)(1).[13] The district court's March 5, 1997 judgment addressed the sole issue presented by the administrative hearing's record, i.e., Dewey's legal entitlement to a military-service credit. The district court remanded the cause to the agency for recalculation of Dewey's retirement benefits in a manner consistent with the reviewing court's legal conclusions. The March 5, 1997 judgment [*qua* appellate opinion] became final and absolute when no appeal from its provisions was prosecuted within thirty (30) days after it was filed.

■■■■ ¶ 12 There are no OAPA provisions which authorize the district court to re-open appellate proceedings for enforcement purposes once they become final. Further, the issues of (1) entitlement to prejudgment in-

terest and (2) the proper limitations period are not part of the administrative record which was forwarded to the district court for review. Extant jurisprudence requires that when considering an appeal brought under the OAPA's provisions the district court must confine its review to the record made before the administrative tribunal.[14] Hence, the district court was acting outside its authority when it attempted to enter its February 12, 1999 enforcement order as part of the appellate proceedings brought from the Board's June 16, 1995 adjudicative order. Insofar as the district court's February 12, 1999 order addresses Dewey's § 318(A)(1) [15] individual appeal, the same is reversed.

## IV

**THE DISTRICT COURT RETAINED JURISDICTION TO ENFORCE ITS MARCH 5, 1997 JUDGMENT ENTERED IN THE CLASS' FAVOR**

■■■■ ¶ 13 We begin with a statement of the obvious. Persons who are not parties to an administrative adjudication from which the appealed agency order emanates have no standing to seek review of that order in an *appellate* proceeding.[16] The record demonstrates that class members—other than Dewey and Riddle—were not named, nor did they participate, in the Board's adjudication of Dewey's administrative claim. Hence, under the OAPA's relevant provisions [17] the class members do not qualify as "parties" to the "individual proceeding" on the claim and cannot seek *appellate review* of the agency's

---

12. Administrative Procedures Act, 75 O.S.1991 § 318 A(1) & B(2).

13. *See infra* note for the pertinent terms of 75 O.S.Supp.1992 § 318(A)(1).

14. *City of Tulsa, supra* note at 1219; *Lowry v. Bd. of Chiropractic Examiners,* 1981 OK 80, 631 P.2d 737. *See also Ricks Exploration v. Okl. Water Resources Bd.,* 1984 OK 73, 695 P.2d 498, 502, which holds that a district court may not invade "the forbidden arena of [an agency's] original cognizance" by considering—in an appeal from an individual proceeding—issues not before the agency.

15. *See infra* note for the pertinent terms of 75 O.S.Supp.1992 § 318(A).

16. The pertinent terms of the relevant OAPA statutes are as follows:

75 O.S.Supp.1992 § 318:
A. 1. Any *party* aggrieved by a final agency order in an individual proceeding is entitled to ... judicial review thereof....
75 O.S.Supp.1992 § 250.3:
7. "Individual proceeding" means the formal process employed by an agency having jurisdiction by law to resolve issues of law or fact between parties and which results in the exercise of discretion of a judicial nature;
8. *"Party"* means a person or agency *named and participating* ... in an individual proceeding. [Emphasis added.]

17. *See supra* note.

final order entered in the same. This is not to say that firefighters like-situated to Dewey have no avenue of redress for perceived harm to their rights to receive statutorily-authorized, military-service credits.

¶ 14 The record demonstrates that class members—except Dewey and Riddle—did not file administrative claims seeking the benefit of the statutorily-prescribed, military-service credit even though they held vested interests in the firefighters retirement system and were potentially entitled to the credit. They can with certainty be said not to have exhausted available administrative remedies before bringing their district court action. Nonetheless, while the common law requires parties to first exhaust available administrative remedies before seeking redress in the district courts,[18] exhaustion is not required in all cases, such as when administrative remedies are inadequate, ineffective or unavailable.[19]

¶ 15 The court's analysis in *Allen v. State*, 1988 OK 99, 769 P.2d 1302, is instructive in understanding the essence of the class' district-court petition. The *Allen* Court recognized a class' right to bring a district-court-declaratory-judgment suit [20] under the OAPA's provisions from a *de facto* agency rule—*i.e.*, a rule which is definite enough to represent the agency's position on a particular subject but is not the product of the formal rulemaking process.[21] A general prerequisite for bringing such a suit is substantial harm to the class' rights by the (de facto) *agency rule*. In *Allen* the Court found that an agency's "obedience" to the legal advice of the Attorney General—whether considered binding or merely advisory—effected adoption of the Attorney General's opinion *as a rule*.[22] This is understandable when one comprehends that a state agency is deemed protected from liability when it proceeds upon the basis of the state's chief law officer's advice.[23] Here, the record documents that Board relied upon informal advice from the Attorney General [24] to support its denial of military-service credits to firefighters who held vested interests in the retirement system. After Board's adoption of the Attorney General's advice as a basis for its legal response to claims for military-service credits, the procedural remedy of a declaratory-relief suit afforded by the OAPA § 306 was available to the class to test the validity of the agency's *de facto* rule. To require class members to file individual claims as a predicate to seeking redress from Board's asserted legal position on military-service credits would have in essence required class members to do a vain and useless act.[25] This neither the law nor equity will do.[26]

18. For the rationale supporting the law's requirement of exhaustion of administrative remedies. see *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n*, 1988 OK 117, 764 P.2d 172, 180.

19. *Double "LL" Contractors, Inc. v. State*, 1996 OK 30, 918 P.2d 34, 39; *Martin v. Harrah I.S.D.*, 1975 OK 154, 543 P.2d 1370, 1372.

20. *See* the terms of 75 O.S.1991 § 306(A), which provide in pertinent part:

The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court ... if it is alleged the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff.

Also relevant are the terms of 75 O.S.1991 § 306(D), which provide:

A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question.

21. For comparable analysis regarding declaratory orders not the product of formal rulemaking processes, see Kenneth Culp Davis, Administrative Law Text §§ 21.05 & 21.06.

22. *See Allen v. State*, 1988 OK 99, 769 P.2d 1302, 1308 n. 33.

23. *Id.*

24. *See* Attorney General's Informal Opinion No. 94-588, dated October 21, 1994.

25. Board's failure to object to or otherwise appeal from the class' certification also evinces acknowledgment of class members' right to seek declaratory relief under the OAPA § 306(A) & (D) without first exhausting administrative remedies.

26. *City of Cherokee v. Tatro*, 1981 OK 127, 636 P.2d 337, 339; *Fitts v. Standard Life and Acc. Ins. Co.*, 1974 OK 60, 522 P.2d 1040. "Equity will not require the doing of a useless act." *Parker v. McCauley*, 1964 OK 86, 393 P.2d 527, 529, *quot-*

¶ 16 The above characterization of the class members' petition is critical to resolution of today's appeal. We have undertaken our analysis not to revisit the provisions of the district court's March 5, 1997 declaratory judgment but rather to afford insight into the true nature of, and hence jurisdictional basis for, the district court's February 12, 1999 order. It is only when the latter's character as a *postjudgment enforcement order* [as to the class' rights] is understood that the district court's authority to enter the same becomes apparent. Oklahoma extant jurisprudence teaches that if a trial court possesses the jurisdiction needed to render judgment, it has authority and power to enforce the same and give it effect.[27] Since the district court was vested with jurisdiction over the class' declaratory-relief suit, it has the power to enter a postjudgment order enforcing its judgment in the same.

## V.

### CLASS' ACTION ACCRUED THREE YEARS BEFORE THE FILING DATE OF ITS PETITION SEEKING DECLARATORY RELIEF

¶ 17 Since the parties agreed at trial that the case in controversy is governed by the three-year statute of limitations governing actions upon a liability created by statute,[28] the Court need not, and does not, revisit the issue whether or not this is the correct limitation period. Rather today's appeal draws the Court's attention to when the class' claim accrued. It is from this temporal marker that the limitations period is measured. This sets the period for which Board must recalculate eligible class members' enhanced retirement benefits—i.e., by giving credit for allowed military service. Class [using an "incorporation" theory] assert that its cause accrued

(on the Board's ongoing monthly obligation to each eligible member) three years before Dewey filed his administrative claim with Board. Board contends the marker—antecedent to which it should recalculate enhanced benefits—is the expiration date of 11 O.S.Supp.1994 § 49-100.3G [H.B. 2228]. Neither position is sustainable.

¶ 18 Oklahoma's class action statute—12 O.S.1991 § 2023—bears great similarity to the provisions of Rule 23, Fed. R. Civ. P. Earlier case law recognizes the insight which can be garnered through consideration of federal court decisions addressing federally-evolved concepts reflected in Oklahoma's procedural regime.[29] The U.S. Supreme Court's seminal decision—addressing the relationship between filing a class-action suit and a statute of limitations—is *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). There the Court held that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class...." *Id.* at 414 U.S. at 554, 94 S.Ct. at 766.

¶ 19 Dewey's filing of his administrative claim alone does not afford Board notice of the class' identity or the extent of its members' claims, thereby depriving Board of the fundamental fairness which is its due. It is the *filing of the class action* which gives the defendant/Board notice *not only* of the class members' substantive claims *but also* of the "number and generic identities of the potential plaintiffs".[30] Hence, it is Dewey's filing of the declaratory-relief suit on behalf of himself and like-situated firefighters which tolls the running of the applicable statute of limitations for the class' members.[31]

¶ 20 As to each class member, other than Dewey, the accrual date for his/

ing *Grady v. Marshall*, 1955 OK 285, 288 P.2d 1101.

27. *Lambert v. Hill*, 1937 OK 331, 73 P.2d 124, 126. *See also Riggs v. Johnson County*, 73 U.S. (6 Wall) 166, 18 L. Ed. 768 (1867).

28. *See* 12 O.S.1991 § 95 (Second).

29. *Mattoon v. City of Norman*, 1981 OK 92, 633 P.2d 735.

30. This comports with the Supreme Court's holding in *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 767, 38 L.Ed.2d 713 (1974).

31. Today's holding is comparable to the Court's application of the limitations period in a class action suit in *Sholer v. State ex rel. Dept. of Public Safety*, 1997 OK 89, 945 P.2d 469, 475. For additional analysis see Herbert B. Newberg and Alba Conte, Newberg on Class Actions § 6.03 (1992).

her claim is three years antecedent to the filing date (July 6, 1995) of the class' petition in the district court. As to Dewey,[32] he is entitled to recalculation of those retirement benefits which accrued during the three-year period immediately preceding the filing date (February 4, 1994) of his administrative claim with the firefighters retirement system.[33] Claims for periods extending back more than three years from the respective temporal markers are time-barred as beyond the agreed limitations period.

## VI

## CLASS FAILED TO MEET THE STATUTORILY-DECLARED PRECONDITION FOR RECEIPT OF PREJUDGMENT INTEREST AND, HENCE, IS NOT ENTITLED TO RECEIVE THE SAME

▆▆▆▆ ¶ 21 Board contests the district court's award of prejudgment interest under the provisions of 23 O.S.1991 § 6.[34] In Oklahoma it is settled that recovery of interest on a judgment must be predicated upon statute.[35] In this regard Oklahoma's procedural regime—as statutorily defined—imposes specific time limits governing the district court's authority to award recovery of interest on judgments. Specifically, the provisions of 12 O.S.Supp.1995 § 696.4 [36] require that while it is not necessary that interest be provided for in the judgment, parties statutorily entitled to the same may secure such interest by filing application within thirty (30) days after judgment is filed. This requirement is an *indispensable precondition* to entitlement to the statutorily-compelled allowance of prejudgment interest. The judgment roll—while showing the motion for attorney's fees necessitated by § 696.4 was timely filed—does not reflect that the class also applied for a prejudgment-interest award within the required statutory period. The Court also notes that Section 696.4(B)'s terms allow the district

**32.** Since the Board never considered the limitations issue [only entitlement was considered] in the original adjudication of Dewey's claim, the record of his individual proceeding precluded the district court from addressing accrual as part of the appellate proceeding. Nonetheless, the district court [as a *trial* court] was not foreclosed from reaching the issue of when Dewey's claim accrued in the context of the class action.

**33.** The district court rejected Board's attempt to characterize Dewey's administrative claim as but a mere "survey" and found that the paperwork filed by Dewey with Board on February 4, 1994 was an administrative claim. The district court's finding is supported by competent evidence and will not be disturbed on appeal.

**34.** *See* 23 O.S.1991 § 6, whose pertinent provisions are:

Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . .

**35.** *Withrow v. Red Eagle Oil Co.*, 1988 OK 16, 755 P.2d 622.

**36.** The pertinent terms of 12 O.S.1991 § 696.4 are:

A. A judgment, decree or appealable order may provide for costs, attorney's fees and interest or any of these items, but it need not include them. . . . .

B. If attorney's fees, costs or interest have not been included in the judgment, decree or appealable order, a party seeking any of these items *must file an application* with the court clerk along with the proof of service of the application on all affected parties in accordance with Section 2005 of this title. The application must set forth the amount requested and include information which supports that amount. *The application must be filed within thirty (30) days after the filing of the judgment, decree or appealable order.* If the party filing the application did not prepare the judgment, decree, or appealable order, and Section 696.2 of this title required a copy of the judgment, decree, or appealable order to be mailed to the party filing application, and the court records do not reflect the mailing of a copy of the judgment, decree, or appealable order to the party filing the application within three (3) days, exclusive of weekends and holidays, after the filing of the judgment, decree, or appealable order, the application may be filed no later than thirty (30) days after the earliest date on which the court records show that a copy of the judgment, decree, or appealable order was mailed to the party filing the application. For good cause shown, the court may extend the time for filing the application *upon motion filed within the time that the application could be filed.* Within fifteen (15) days after the application is filed with the court, any party may file written objections to it, with a copy to the moving party. [Emphasis added.]

court—"for good cause shown"—to extend the time for filing the required application if (1) the court is apprized of the reasons for delay and (2) the party seeking prejudgment interest gives notice within the original application-filing period. Nonetheless, the record discloses class made no such application. Because the statutorily-required application for prejudgment interest was not timely filed by the class, the district court was without authority to award the same.[37] The allowance of prejudgment interest to the class is hence reversed.

## VII

### SUMMARY

¶ 22 Today's pronouncement addresses the nature of two proceedings combined into a single case before the district court and used by the litigants to challenge the denial of military-service credits to themselves as holders of vested interests in the firefighters retirement system. Dewey filed an individual claim with the retirement system and appealed when Board denied him the requested military-service credit. On the other hand the class—of which Dewey was but one member—pursued the remedy of a declaratory judgment before the district court to secure enhanced retirement benefits.

▆ ¶ 23 As the district court's appellate jurisdiction is conferred by statute [specifically the OAPA], its "reviewing" authority is circumscribed by the statutory provisions granting the same. The OAPA does not give the district court authority to enforce its appellate opinions and further confines the scope of its review to issues presented by the record of the "individual proceeding" conducted by the agency. These conclusions compel the reversal of the February 12, 1999 "postjudgment enforcement order" to the extent that it addresses issues—identification of the proper statute of limitations and entitlement to prejudgment interest—not fairly

comprised in the Board's June 16, 1995 order.

¶ 24 Unlike when it sat in review of Dewey's appeal from the agency's adjudication, the district court was sitting as a court of first instance when it considered the class' application for declaratory relief. As a trial court it possessed authority not only to render judgment but also to enforce the same. Hence, its consideration of the issues of limitations and prejudgment interest as to the class were entirely within the scope of its authority. Nonetheless, the trial court's enforcement order failed to give proper effect to the bringing of the class-action suit. It is the action's filing which suspends the running of the statute of limitation, and it is the three-year period antecedent to this temporal marker for which vested, retired firefighters are entitled to enhancement of retirement benefits by consideration of military-service credits. The February 12, 1999 postjudgment enforcement order errs also in its award of prejudgment interest. We need not reach the issue of entitlement to the same for the class failed to satisfy an indispensable statutory precondition to receipt of such interest. The record does not disclose that class sought prejudgment interest within thirty (30) days after the judgment was filed as is required by the terms of 12 O.S.1991 § 696.4. *Sans* the required filing the district court was without authority to make the prejudgment-interest award and the same is reversed.

¶ 25 For the above reasons,

**THE TRIAL COURT'S ORDER IS REVERSED IN PART AND SUSTAINED IN PART.**

¶ 26 HARGRAVE, C.J., HODGES, LAVENDER, OPALA, KAUGER, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur.

¶ 27 WATT, V.C.J., concurs in result.

OPALA, J., concurring.

¶ 1 The court imposes today the mandatory § 696.4 [1] deadline of thirty days for add-

---

37. For comparable analysis concerning the effect of noncompliance with temporal-filing requirements governing access to the courts, see *Matter of the Estate of Speake*, 1987 OK 61, 743 P.2d

648. *See also Medill v. Snyder*, 71 Kan. 590, 81 P. 216 (1905).

1. The pertinent provisions of 12 O.S. Supp. 1995 § 696.4 include:

ing prejudgment interest to an already memorialized recovery that was silent on that subject and treats the § 696.4 time limit as *a temporal restriction upon the district court's exercise of power* over applications, brought after a judgment's memorial has been placed on file, which tender for judicial determination disputes addressing certain enumerated items (a) that add to recovery or (b) that are incidents of the adjudicated recovery.[2] While I agree with the court's pronouncement, I add my view that the § 696.4 time bar is different in its impact on each of the components that are there enumerated.[3] These three statutorily listed components represent both (1) items of recovery that are to be added (*e.g.*, prejudgment interest) as well as (2) mere incidents of recovery which either (a) must be judicially determined (*e.g.*, attorney's fee and cost items that are not *de cursu*) or (b) run by operation of law (*e.g.*, postjudgment interest and *de cursu* costs).

¶ 2 Legal practitioners must not be left adrift in the aftermath of today's opinion. Neither the bench nor the bar should have to guess or wonder whether today's pronouncement will make unenforceable postjudgment interest and *de cursu* costs [4] in all cases in which the judgment's memorial was silent on

these incidents of recovery and there was no timely § 696.4 application for the incorporation of these items into the journal entry. By writing separately from the court I hope to equip the reader with a meaningful **and much-needed** analytical tool for a *more profound understanding of the several discrete award components* that are clustered together in § 696.4. The explanation I supply will no doubt assist the bench and bar in avoiding the hidden traps of that section's remedial regime *for both enhancing an adjudged recovery as well as for merely adding certain incidents of memorialized recovery.*

¶ 3 The precise issue now before the court, though correctly resolved, neither provides a complete answer to the myriad of potential § 696.4-spawned problems nor attempts to still likely-to-be-aroused concerns about the differing impact of today's pronouncement on each of the several components that are apt to be affected by this opinion. *The first of these components is **interest**.* If by this term, as the court holds today, **both** pre-and postjudgment interest stand included, the *former* would be considered *an added **component of recovery*** [5] whereas the *latter* is a mere **incident of adjudged recovery**. A judgment creditor's application for prejudgment inter-

"A. A judgment, decree or appealable order may provide for costs, attorney's fees and interest or any of these items, but it need not include them. The preparation and filing of the judgment, decree or appealable order shall not be delayed pending the ·determination of these items. Such items may be determined by the court if a timely request is made, regardless of whether a petition in error has been filed. B. If attorney's fees, costs or interest have not been included in the judgment, decree or appealable order, a party seeking any of these items must file an application with the court clerk along with proof of service of the application on all affected parties … The application must set forth the amount requested and include information which supports that amount. The application must be filed within thirty (30) days after the filing of the judgment, decree or appealable order. * * * For good cause shown, the court may extend the time for filing the application upon motion filed within the time that the application could be filed. Within fifteen (15) days after the application is filed with the court, any party may file written objections to it, with a copy to the moving party."
* * *

**2.** Temporal restrictions on the court's power to act differ from ordinary statutes of limitations.

For an explanation of the conceptual difference between legislation that temporally restricts the court's exercise of power and the statutes of limitation, which extinguish merely the remedy, see *Matter of the Estate of Speake*, 1987 OK 61, ¶ 13, 743 P.2d 648, 652; *U.S. Through Farmers Home Admin. v. Hobbs*, 1996 OK 77, ¶¶ 1–8, 921 P.2d 338, 344–345 (Opala, J., concurring in judgment but not in the court's opinion).

**3.** The components listed in 12 O.S.Supp. 1995 § 696.4, *supra* note 1, include: (1) costs (2) an attorney's fee and (3) interest.

**4.** Oklahoma's practice of treating some costs as taxable "of course" follows the common law's *de cursu* taxation of costs. For a discussion of cost items taxable *de cursu*, see *Chamberlin v. Chamberlin*, 1986 OK 30, ¶ 11, 720 P.2d 721, 726 n. 25.

**5.** Prejudgment interest, which is a recovery component, is different from postjudgment interest. *May-Li Barki, M.D., Inc. v. Liberty Bank and Trust Co.*, 1999 OK 87, ¶ 4, 20 P.3d 135, 142–143 (supplemental opinion on rehearing); *Fleet v. Sanguine, Ltd.*, 1993 OK 76, ¶ 11, 854 P.2d 892, 899.

est's inclusion, such as that which was sought here, would be affected by the § 696.4 time bar but a quest for postjudgment interest would not. This is so because *interest on a judgment* runs by force of law and without any judicial intervention.[6] A postjudgment attorney's fee quest that seeks an allowance for the value of legal services due the prevailing party or some other statutorily-entitled litigant *does not run by force of law.* An application for postjudgment recovery of a counsel-fee award would be affected by the section's time-bar provisions. This is so because such award calls for an application and a hearing before the added allowance may be made.[7] Lastly, the § 696.4 time bar would not affect *ordinary court costs,*[8] or so-called *de cursu* cost items, which accrue by operation of law and *sans* judicial intervention.[9] Costs other than *de cursu* could not be collected if pressed for taxation after the § 696.4 time bar.

---

**6.** Postjudgment interest is provided for by the terms of 12 O.S. Supp. 1999 § 727:

"A. 1. *Except as otherwise provided by this section, all judgments of courts of record, including costs and attorney fees authorized by statute or otherwise and allowed by the court, shall bear interest at a rate prescribed pursuant to this section.*
2. Costs and attorney fees allowed by the court shall bear interest from the earlier of the date the judgment or order is pronounced, if expressly stated in the written judgment or order awarding the costs and attorney fees, *or the date the judgment or order is filed with the court clerk.*
\* \* \*
C. *The postjudgment interest authorized* by subsection A or subsection B of this section shall accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk, and shall initially accrue at the rate in effect for the calendar year during which the judgment is rendered until the end of the calendar year in which the judg-

ment was rendered, or until the judgment is paid, whichever first occurs." \* \* \*
(emphasis added).
The trial court's enforcement of postjudgment interest is not impermissible, even though that interest was not included in the text of the judgment's memorial. *Baldwin v. Collins,* 1970 OK 210, ¶ 14, 479 P.2d 567, 570.

**7.** *Burk v. City of Oklahoma City,* 1979 OK 115, ¶¶ 17–22, 598 P.2d 659, 662–63.

**8.** *Chamberlin, supra* note 4 at ¶ 11, at 726 n. 25. Statutory *de cursu* taxation of ordinary costs is authorized by 12 O.S. 1991 § 928. Its terms provide:
"Where it is not otherwise provided by this and other statutes, costs shall be allowed *of course* to the plaintiff, upon a judgment in his favor, in actions for the recovery of money only, or for the recovery of specific, real or personal property."
(emphasis supplied).

**9.** "Costs and [postjudgment] interest are recoverable by statute whether set out in the judgment or not." *Baldwin, supra* note 6, at ¶ 14, at 570.