OSCN Found Document:LAST CHANCE MINERALS v. BP AMERICA PRODUCTION CO.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 LAST CHANCE MINERALS v. BP AMERICA PRODUCTION CO.
2023 OK CIV APP 44
Case Number: 119379
Decided: 08/25/2023
Mandate Issued: 11/16/2023
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV

Cite as: 2023 OK CIV APP 44, __ P.3d __

 
LAST CHANCE MINERALS, INC., Intervening Plaintiff/Appellant,
v.
BP AMERICA PRODUCTION COMPANY f/k/a AMOCO PRODUCTION COMPANY, Defendant/Appellee.
APPEAL FROM THE DISTRICT COURT OF
PITTSBURG COUNTY, OKLAHOMA
HONORABLE TIM MILLS, TRIAL JUDGE
AFFIRMED
T. Matthew Smith, Taylor A. Moult, SMITH & KLUBECK, PLLC, Oklahoma City, Oklahoma, for Intervening Plaintiff/Appellant
Harvey D. Ellis, CROWE & DUNLEVY, Oklahoma City, Oklahoma, 
Charles D. Neal, Jr., STEIDLEY & NEAL, P.L.L.C., Tulsa, Oklahoma
and
David Patrick Long, SQUIRE PATTON BOGGS, (US) LLP, Dallas, Texas, for Defendant/Appellee
JAMES R. HUBER, JUDGE:
¶1 Intervening plaintiff, Last Chance Minerals, Inc., (LCM) appeals a district court order finding the undisputed evidence showed LCM's claims were not tolled and were barred by the applicable statute of limitations and, therefore, granting summary judgment in favor of defendant, BP America Production Company f/k/a/ Amoco Production Company (Amoco) and against LCM.[1] The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S.2021, ch. 15, app. 1.
BACKGROUND
¶2 This action was originally filed in Pittsburg County (C-2001-73) on January 16, 2001, by a group of royalty owners (Plaintiffs) against Amoco and Gothic Production Corporation. LCM was not one of the plaintiffs. Plaintiffs amended their Petition on June 24, 2002, asserting a putative class action on behalf of mineral/royalty owners in Amoco's wells in seven Oklahoma counties. Plaintiffs alleged that Amoco was the operator of drilling and spacing units for these mineral/royalty interests. Plaintiffs claimed that Amoco underpaid royalties on gas production by improperly deducting certain post-production costs from royalty payments to putative class members who had interest in these wells. Amoco sold the wells and the Choctaw Thrust Gathering System to Gothic in 1997.
¶3 Amoco opposed the certification of the class basically contending that none of the claims asserted by the royalty owners could be appropriately determined on a class basis.
¶4 After briefing and a hearing on Plaintiffs' motion to certify the class, the district court denied Plaintiffs' request to certify the class on December 26, 2002. The district court adopted the findings of fact and conclusions of law presented by Amoco. The district court found that Plaintiffs alleged Amoco improperly deducted gathering, compression, and dehydration costs incurred between the wellhead and the main transmission line, which are considered post-production costs. Relying on Mittelstaedt v. Santa Fe Minerals, Inc., 1998 OK 7, 954 P.2d 1203, and Gillespie v. Amoco Prod. Co., No. CIV-96-063-M (E.D. Okla. Jan. 11, 1999), the district court held post-production costs must be individually examined to determine if these costs can be properly deducted. This individualized inquiry required denial of class certification.
¶5 The district court listed several other reasons for denying class certification:
[T]he various royalty provisions included in the proposed class are materially different, and because Amoco did not treat all royalty owners in a like fashion, demonstrating that the predominance and superiority requirements have not been met.
¶6 The Oklahoma Court of Civil Appeals affirmed the district court's denial of class certification on September 14, 2004. The Court of Civil Appeals found Amoco's findings of fact and conclusions of law properly disposed of the class certification question. The Court elaborated on its ruling:
As a consequence, we find it unnecessary to discuss the controversy in detail. We think it sufficient to note that (1) gas produced by the wells in question was marketable at the wellhead, (2) the costs incurred between the wellhead and the pipeline tailgate to prepare the gas for introduction into the pipeline are post-production costs, and (3) the propriety of deducting those costs involves an individualized inquiry of the factors discussed in Mittelstaedt v. Santa Fe Minerals, Inc., 1998 OK 7, 954 P.2d 1203, making this issue unsuitable for class action disposition. The need for individualized inquiry is further evident by the need to examine each of thousands of sales in deciding whether Amoco received the best market price for the gas vis-a-vis the costs incurred to prepare the gas for introduction into the pipeline. Like the trial court, we do not decide whether the deductions were proper, or whether the best price was obtained, leaving the parties to litigate the merits of these issues.

Watts v. Amoco Prod. Co., Case No. 98,782 (Okla. Civ. App. Sept. 14, 2004).
¶7 The Oklahoma Supreme Court denied certiorari on January 24, 2005, and issued mandate on February 10, 2005.
¶8 On October 4, 2004, while the appeal of the district court's denial of class certification was pending, a similar proposed class action, Chockley v. BP America Production Co., CJ-2002-84, was filed in Beaver County, Oklahoma. LCM was allegedly also a putative class member of the Chockley class. Chockley was dismissed with prejudice on December 26, 2018, prior to a determination of class certification.
¶9 LCM and others filed Intervenors' Petition on March 15, 2006, and on the next day filed an Application to Intervene. The Intervenors' Petition was essentially identical to the Petition originally filed by Plaintiffs. [2] In the Application to Intervene, LCM and the other applicants alleged they were members of the putative class proposed by Plaintiffs. They asserted the "Plaintiffs and the Applicants object to the exact same improper deductions taken by the defendant." LCM and the other applicants argued that they had elected to intervene in the existing suit rather than filing a separate lawsuit alleging the same claims.
¶10 Amoco objected to LCM's application to intervene.
¶11 The district court granted leave to intervene to those proposed intervenors "who have royalty interests in units in the Choctaw Thrust Gas Gathering System" on June 1, 2006, but only as to their royalty interests in units in Choctaw Thrust.
¶12 On May 16, 2017, on Amoco's motion, the district court dismissed LCM's claims for breach of duty of good faith and fair dealing, breach of fiduciary duty, breach of implied duty to market, and unjust enrichment against Amoco, leaving intact LCM's claims for breach of contract, fraud, and constructive fraud.
¶13 On November 6, 2017, Amoco moved for summary judgment against the Plaintiffs and the Intervening Plaintiffs, including LCM, on several grounds, including the statutes of limitations.[3] Amoco argued LCM's breach of contract and fraud-based claims were barred by the applicable statute of limitations. As to LCM's breach of contract claim, Amoco asserted the claim was governed by the five-year statute of limitations provided for in 12 O.S.2021 § 95(A)(1).[4] Amoco alleged LCM claimed Amoco deducted post-production costs from their royalties, which were not permitted under their leases. Amoco asserted the alleged monthly underpayment of royalty payments started the running of the statute of limitations. According to Amoco, since LCM claimed this conduct began in 1989, and no later than May 1998 (the last month LCM admittedly received a check stub from Amoco), LCM's breach of contract claims expired years before LCM filed its Intervenors' Petition on March 15, 2006.
¶14 In addition, Amoco argued it was entitled to summary judgment on the fraud and constructive fraud claims because these claims were barred by the two-year statute of limitations set forth in 12 O.S.2021 § 95(A)(3).[5] Amoco alleged that a fraud-based action accrues upon the discovery of the fraud. Amoco claimed LCM knew or should have discovered the facts underlying their fraud-based claims that Amoco deducted post-production costs from their royalties well before March 15, 2004, two years prior to LCM filing its Intervenors' Petition on March 15, 2006. Amoco alleged LCM "reviewed and signed a transfer order explaining that the very post-production costs Intervenors allege were fraudulently hidden here would be deducted from its royalty payments."
¶15 Amoco also maintained that LCM's claims were not saved by the tolling doctrine.
¶16 In response, LCM argued its claims were saved by the tolling doctrine of American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974). LCM alleged the filing of a class action tolls the statute of limitations and that tolling continues until the Oklahoma Supreme Court issues mandate on a district court's denial of class certification. LCM also claimed that it could rely on a separate later-filed class action in which LCM was allegedly a member of the putative class, such as the Chockley class action, to toll the statute of limitations. LCM claimed there was a pending proposed class certification dealing with LCM's claims from the time Plaintiffs filed their Petition until the Intervening Plaintiffs, including LCM, filed Intervenors' Petition.
¶17 On March 6, 2018, the district court entered an order denying Amoco's summary judgment motion as to Plaintiffs and granting the motion as to the two Intervening Plaintiffs, including LCM.[6] The district court held "there is no evidence in the record when viewed in the light most favorable to Intervenor Plaintiffs, from which a reasonable jury could find that any applicable statute of limitations was tolled."
¶18 LCM appeals the district court's grant of summary judgment in favor of Amoco and against LCM.
STANDARD OF REVIEW
¶19 "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. "Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is de novo." Id. This Court will examine the pleadings and evidentiary materials to determine if there is a genuine issue of material fact. Ross v. City of Shawnee, 1984 OK 43, ¶ 7, 683 P.2d 535, 536. In addition, all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. Id.
¶20 "To prevail as the moving party on a motion for summary adjudication, one who defends against a claim by another must either (a) establish that there is no genuine issue of fact as to at least one essential component of the plaintiff's theory of recovery or (b) prove each essential element of an affirmative defense, showing in either case that, as a matter of law, the plaintiff has no viable cause of action." Akin v. Missouri Pac. R.R. Co., 1998 OK 102, ¶ 9, 977 P.2d 1040, 1044. The statute of limitations is an affirmative defense. 12 O.S.2021 § 2008(C)(18). Therefore, Amoco was required to demonstrate that the record reveals no substantial controversy as to any material fact regarding the statute of limitations and that the uncontroverted facts are in its favor.
ANALYSIS
¶21 LCM argues on appeal that the district court erred in finding its breach of contract, fraud, and constructive fraud claims were barred by the applicable statute of limitations and granting summary judgment in favor Amoco and against LCM. LCM claims the statute of limitations was tolled during the appeal process of the denial of the class certification and did not end until the Supreme Court issued mandate on the decision. LCM also alleges the district court erred in failing to toll the statute of limitations during the pendency of this class action as well as the Chockley class action.
¶22 "The enactment of a statute of limitations is a legislative expression of policy 'that prohibits litigants from raising claims after the expiration of a given period of time.'" Kinzy v. State ex rel. Oklahoma Firefighters Pension and Ret. Sys., 2001 OK 24, ¶ 11, 20 P.3d 818, 823. "'The underlying purpose of statutes of limitations is to prevent the unexpected effort at enforcement of stale claims concerning which persons interested have been thrown off their guard by want of prosecution for a long time.'" Wing v. Lorton, 2011 OK 42, ¶ 11, 261 P.3d 1122, 1125 (quoting Seitz v. Jones, 1961 OK 283, ¶ 11, 370 P.2d 300, 302).
1. Breach of Contract Claim
¶23 For each claim, we must first determine when the claim accrued and when the statute of limitations for each claim began to run. Generally, the statute of limitations begins to run from the accrual date. Consol. Grain & Barge Co. v. Structural Sys., Inc., 2009 OK 14, ¶ 9, 212 P.3d 1168, 1171. For a breach of contract action, the claim generally accrues "when the contract is breached, regardless of whether the plaintiff knows, or in the exercise of reasonable diligence, should have known of the breach." Morgan v. State Farm Mut. Auto. Ins. Co., 2021 OK 27, ¶ 31, 488 P.3d 743, 753. In other words, the claim accrues when a party can first maintain an action to a successful conclusion. Wille v. Geico Cas. Co., 2000 OK 10, ¶ 10, 2 P.3d 888, 891. Oklahoma law does not apply the discovery rule to a breach of contract action. Morgan, 2021 OK 27 ¶ 31, 488 P.3d at 753.
¶24 A review of the Intervenors' Petition reveals that the conduct of which LCM complains is that Amoco improperly deducted post-production costs from royalty payments. LCM would have been able to maintain an action upon first receiving Amoco's royalty payment with the alleged improper deduction of costs. At the latest, LCM could have maintained an action as of December of 1997, when its contractual relationship with Amoco ended or no later than May 1998, the last month LCM received a check stub from Amoco.
¶25 As previously mentioned, a breach of contract action is governed by the five-year statute of limitations set forth in 12 O.S.2021 § 95(A)(1). However, the "'commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class.'" Dewey v. State ex rel. Oklahoma Firefighters Pension and Ret. Sys., 2001 OK 40, ¶ 18, 28 P.3d 539, 547 (quoting American Pipe and Constr. Co. v. Utah, 414 U.S. 538, 554 (1974)). "[O]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." Brashears v. Sight 'N Sound Appliance Ctrs., Inc., 1999 OK CIV APP 52, ¶ 5, 981 P.2d 1270, 1272 (quoting Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 354 (1983)) cert. denied.
¶26 The parties differ in their interpretation of when class certification is denied for purposes of tolling the statute of limitations. LCM argues the statute of limitations was tolled from the date Plaintiffs filed their Petition until the Supreme Court issued mandate on the district court's denial of the class certification application. Conversely, Amoco contends the tolling period ended on the date the district court denied the application for class certification.
¶27 In Brashears, the Oklahoma Court of Civil Appeals applied the interpretation advocated by Amoco. In calculating the statute of limitations, the Brashears Court terminated the tolling period on the date the district court denied the class certification. This holding is consistent with American Pipe and Constr. Co. v. Utah, 414 U.S. 538, 561 (1974)("[T]he commencement of the class action in this case suspended the running of the limitation period only during the pendency of the motion to strip the suit of its class action character.") and Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 354 (1983)("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.").
¶28 At the point when the district court denies certification, class members are on notice that they will have to file individual claims to protect their rights unless an appeal is filed and the denial of certification is reversed.[7] Delaying the filing of individual claims in that circumstance does not serve the statute of limitations purpose of preventing the enforcement of stale claims. See Wing v. Lorton, 2011 OK 42, ¶ 11, 261 P.3d 1122, 1125. If an appeal is filed and results in the reversal of the decision denying class certification, the individual claims can be consolidated, subject to the plaintiff's right to litigate the claim individually. However, if the appellate court affirms the denial of certification, litigation of the individual claims will not have been unnecessarily delayed.
¶29 Unlike an interlocutory appeal from a decision denying a motion to compel arbitration, litigation of individual claims during an appeal of a decision denying certification of a class does not largely defeat the purpose of the class action statute. Cf., Coinbase, Inc. v. Bielski, 599 U.S. ___, 143 S. Ct. 1915, 1920 (2023) (continuing litigation pending appeal of the denial of a motion to compel arbitration "makes no sense" and would nullify the statutorily provided right to appeal that decision). In class actions, the individual claims will have to be litigated whether separately or collectively depending on the result of the appeal. Unnecessary delay pending an appeal of the denial of class certification, particularly where the appeal is unsuccessful, would largely defeat the purpose of the various statutes of limitation. "Given the uncertainty that exists in extending tolling beyond denial of class status, . . . we conclude that a narrow, clearly defined rule best serves American Pipe tolling." Giovanniello v. ALM Media, LLC, 726 F.3d 106, 119 (2d Cir. 2013). We find Brashears instructive and in align with the decisions of the United States Supreme Court. We hold that the tolling period ends for purposes of tolling a statute of limitations upon the district court's decision denying class certification, not with the mandate after the appellate court's decision.
¶30 In addition, LCM argues the filing and pendency of the Chockley class action suspended the running of the statute of limitations for LCM, who allegedly would have been a member of the Chockley putative class had the district court granted class certification. LCM claims its action in the present lawsuit was tolled from the date Plaintiffs filed their Petition in the present action on January 16, 2001, until LCM filed Intervenors' Petition because there was a pending unresolved class action against Amoco either in the present case or the Chockley class action. In essence, LCM's argument focuses on the stacking of two different class actions to keep its claims from being untimely.
¶31 American Pipe established that "the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." American Pipe, 414 U.S. at 553. Crown, Cork extended the American Pipe tolling rule to include class members filing separate actions in addition to those seeking to intervene. Crown, Cork, 462 U.S. at 351.
¶32 Here, LCM asks this Court to extend the American Pipe and Crown, Cork tolling rules to allow the commencement of a later-filed class action to toll a putative class member's right to intervene in an earlier-filed case. We decline to broadly construe the established tolling principles as requested by LCM.
¶33 "Endless tolling of a statute of limitations is not a result envisioned by American Pipe." China Agritech, Inc. v. Resh, ___ U.S. ___, 138 S. Ct. 1800, 1803 (2018)(declining to allow a putative class member to file, after denial of class certification, a subsequent class action past the expiration of the statute of limitations). The courts have generally not allowed a putative class member to "stack one class action on top of another and continue to toll the statute of limitations indefinitely." Basch v. The Ground Round, Inc., 139 F.3d 6, 11 (1st Cir. 1998).[8] The Basch Court recognized that to allow such tactics would allow attorneys to file successive putative class actions to perpetually toll the statute of limitations. Id. The tolling rules of American Pipe and its progeny cannot "be applied to suspend the running of statutes of limitations for class action suits filed after a definitive determination of class certification; such an application of the rule would be inimical to the purposes behind statutes of limitations and the class action procedure." Korwek v. Hunt, 827 F.2d 874, 879 (2d Cir. 1987).
¶34 While the facts in those cases involve an alleged putative class member attempting to file a subsequent class action after denial of class certification to keep his or her claims alive, we find the reasoning equally applicable to the present facts. We decline to expand the tolling principles to allow the commencement of a later-filed class action to toll a putative class member's right to intervene in the earlier-filed case. To find otherwise would serve to perpetually toll the running of the statute of limitations.
¶35 Applying the five-year statute of limitations and taking into consideration the tolling period, we find LCM's breach of contract action was barred by the statute of limitations. The five-year limitations period on the contract claim runs from the date LCM filed Intervenors' Petition on March 15, 2006, to the district court's denial of class certification in December 2002 (a total of 39 months, leaving 21 months remaining on the limitations period). The limitations period was tolled from January 2001 to December 2002. LCM's limitations period resumed running on January 16, 2001, the date Plaintiffs filed their Petition. Taking this into consideration, any contract claims predating April of 1999 (21 months before Plaintiffs filed the Petition) are time-barred. Even considering the last date of Amoco and LCM's contractual relationship, December 1997, LCM's contract claim would still be untimely. We find the trial court did not err in finding LCM's breach of contract claim was barred by the statute of limitations and granting summary judgment in favor of Amoco and against LCM on the breach of contract claim.
2. Fraud-based Claims
¶36 The statute of limitations for fraud is two years. 12 O.S.2021 § 95(A)(3). A fraud-based claim accrues when a person discovers the fraud. Id.; Horton v. Hamilton, 2015 OK 6, ¶ 18, 345 P.3d 357, 363. "Fraud is deemed to have been discovered when, in the exercise of reasonable diligence, it could have or should have been discovered." McCain v. Combined Commc'ns Corp. of Okla., Inc., 1998 OK 94, ¶ 8, 975 P.2d 865, 867. "The discovery rule allows the limitation period in certain tort cases to be tolled until the fraud is discovered or until the date the defrauded party, by the exercise of ordinary diligence, might have recognized the deception." Smith v. Baptist Found. of Oklahoma, 2002 OK 57, ¶ 8, 50 P.3d 1132, 1137-38.
¶37 LCM's argument focuses on tolling of the statute of limitations saving the fraud and constructive fraud claims from being time barred. However, as previously discussed, LCM's argument that tolling extended until the Oklahoma Supreme Court issued mandate on the district court's denial of class certification is without merit. The tolling period during the pending class certification application has no impact on the statute of limitations barring the fraud and constructive fraud claims.
¶38 Here, LCM filed its petition on March 15, 2006. The undisputed, material facts clearly show that LCM knew or, in the exercise of reasonable diligence, could have or should have discovered that Amoco allegedly underpaid royalties to LCM. LCM signed a transfer order in 1989 explaining that post-production costs would be deducted from the royalty payments. At the very least, Plaintiffs discovered and sued upon the alleged fraud as early as January 2001 indicating that the alleged fraud could have been discovered using diligent efforts. Further, LCM had notice in 1997-98 after Amoco sold its interest to Gothic and LCM had the opportunity to compare the Amoco check stubs with those received from Gothic.
¶39 We find LCM's fraud and constructive fraud claims were barred by the two-year statute of limitations. The district court did not err in granting summary judgment in favor of Amoco and against LCM on LCM's fraud and constructive fraud claims.
CONCLUSION
¶40 After a review of the appellate record and applicable law, we find the district court did not err in granting summary judgment in favor of Amoco and against LCM. The district court's Order on Defendant's Motions for Summary Judgment Pursuant to the Applicable Statute of Limitations is affirmed.
¶41 AFFIRMED.
FISCHER, J., concurs, and BLACKWELL, P.J., concurs in part and dissents in part.
 
FOOTNOTES
[1] The district court's Order on Defendant's Motions for Summary Judgment Pursuant to the Applicable Statutes of Limitations denied Amoco's summary judgment motion as to Plaintiffs but granted Amoco's summary judgment motion as to the intervening plaintiffs, LCM and Donald Ray Stevens Trust. LCM is the only appellant involved in this appeal.
[2] The prospective intervenors were represented by one of Plaintiffs' counsel.
[3] Amoco filed a motion for summary judgment applicable to both Plaintiffs and Intervening Plaintiffs and a separate summary judgment motion that applied only to the Intervening Plaintiffs, including LCM. This Opinion deals with the facts applicable to LCM.
[4] Title 12 O.S.2021 § 95(A)(1) provides:
A. Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

1. Within five (5) years: An action upon any contract, agreement, or promise in writing; . . .

[5] Title 12 O.S.2021 § 95(A)(3) provides:
A. Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
. . . .

3. Within two (2) years: An action for trespass upon real property; an action for taking, detaining, or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud - the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud; . . .

[6] On January 26, 2021, Plaintiffs filed a Dismissal with Prejudice dismissing all claims or potential claims with prejudice to refiling.
[7] LCM's proposed rule does not address whether tolling of the statute of limitations ends on the date the order denying class certification is filed, or the date any post-trial motion is resolved or the date the time to appeal expires when no appeal is filed. Brashears, which we find persuasive, provides certainty and eliminates two of those possibilities.
[8] We may look to "federal court decisions addressing federally-evolved concepts," such as Oklahoma's class action statutes. Dewey v. State ex rel. Oklahoma Firefighters Pension and Ret. Sys., 2001 OK 40, ¶ 18, 28 P.3d 539, 547.

 
BLACKWELL, P.J., concurring in part and dissenting in part: 
¶1 I agree with the majority's resolution of the question of whether the Chockely case tolled the intervening plaintiff's claim in this suit. It did not. However, I cannot agree that "American Pipe" tolling should end, under Oklahoma's Pleading Code, immediately when the trial judge denies a motion seeking class certification.
¶2 Unlike their federal-court counterparts, litigants in Oklahoma district courts have an absolute right to appeal any order denying class certification. 12 O.S. § 993(A)(6). All the reasons for allowing tolling during pendency of the question of class certification in the district court continue to exist while the appellate courts consider the question. Certainly, the interests of class counsel in seeking to reverse the trial court's denial of class certification are well-aligned with any putative plaintiffs' interests. Requiring all such plaintiffs to file their own case while the question of class certification continues is irrational and undermines the purposes of tolling.[1] I would follow other state courts that have decided that, if there is an interlocutory right to appeal class certification, tolling should continue until that question is finally litigated. See, e. g., Clark v. ConocoPhillips Co., 465 S.W.3d 720 (Tex. App. 2015) (holding that a plaintiff's claim was tolled during the pendency of an interlocutory appeal of right concerning class certification).
FOOTNOTES
[1] It is at least understandable how the federal courts came to their rule. At the time American Pipe was decided, Federal of Civil Procedure 23 had no mechanism by which a party could appeal the denial of class certification until the plaintiff's case was finally decided. When subpart (f) was added--which allows the possibility of an appeal of the denial of class certification but no right to any such interlocutory appeal--several federal courts entertained that the corresponding tolling should also be modified and continue through the interlocutory appellate process. See, e.g., In re Vivendi Universal, S.A. Sec. Litig., 281 F.R.D. 165 (S.D.N.Y. 2012) (holding that "American Pipe tolling automatically continues through the Rule 23(f) interlocutory appeals process"), abrogated by Giovanniello v. ALM Media, LLC, 726 F.3d 106 (2d Cir. 2013); Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1390 (11th Cir. 1998) ("If [FRCP 23 (f)] passes, and if it significantly increases the frequency of interlocutory appeals of class certification orders ... then we may revisit the decision taken today, and might for instance allow continued tolling of statutes of limitations during the pendency of an appeal under the new rule."). Had American Pipe been decided in a regime such as Oklahoma's, where the losing plaintiff holds the absolute right to appeal the denial of class certification, it is likely that a different tolling rule would have developed in federal court.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1999 OK CIV APP 52, 981 P.2d 1270, 70 OBJ 1848, 
Brashears v. Sight 'N Sound Appliance Centers, Inc.
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1998 OK 7, 954 P.2d 1203, 69 OBJ 490, 
MITTELSTAEDT v. SANTA FE MINERALS, INC.
Discussed at Length

 
2001 OK 24, 20 P.3d 818, 72 OBJ 824, 
KINZY v. STATE ex. rel. OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM
Discussed

 
2001 OK 40, 28 P.3d 539, 72 OBJ 1783, 
DEWEY v. STATE ex. rel. OKLAHOMA FIREFIGHTERS PENSION & RETIREMENT SYSTEM
Discussed at Length

 
2002 OK 57, 50 P.3d 1132, 
SMITH v. BAPTIST FOUNDATION OF OKLAHOMA
Discussed

 
1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, 
Carmichael v. Beller
Discussed

 
2009 OK 14, 212 P.3d 1168, 
CONSOLIDATED GRAIN & BARGE CO. v. STRUCTURAL SYSTEMS, INC.
Discussed

 
2011 OK 42, 261 P.3d 1122, 
HAWK WING v. LORTON
Discussed at Length

 
2015 OK 6, 345 P.3d 357, 
HORTON v. HAMILTON
Discussed

 
2021 OK 27, 488 P.3d 743, 
MORGAN v. STATE FARM MUTUAL AUTOMOBILE INSUR. CO.
Discussed at Length

 
2000 OK 10, 2 P.3d 888, 71 OBJ 495, 
Wille v. GEICO Casualty Co.
Discussed

 
1961 OK 283, 370 P.2d 300, 
SEITZ v. JONES
Discussed

 
1998 OK 94, 975 P.2d 865, 69 OBJ 3362, 
McCain v. Combined Communications Corp.
Discussed

 
1998 OK 102, 977 P.2d 1040, 69 OBJ 3512, 
Akin v. Missouri Pacific Railroad Co.
Discussed

 
1984 OK 43, 683 P.2d 535, 
Ross v. City of Shawnee
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 95, 
Limitation of Other Actions
Discussed at Length

 
12 O.S. 993, 
Appeals from Certain Interlocutory Orders - Undertaking
Cited

 
12 O.S. 2008, 
General Rules of Pleading
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA